[Cite as *Bank of New York Mellon v. Floyd*, 2021-Ohio-3736.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| BANK OF NEW YORK MELLON, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110248 |
| v. | : | |
| DORIS M. FLOYD, ET AL., | : | |
| Defendants-Appellants. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 21, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-922817

### *Appearances:*

Reimer Law Co. and Mike L. Wiery, *for appellee.*

Willie Floyd and Doris Floyd, *pro se.*

ANITA LASTER MAYS, P.J.:

**{¶ 1}** Defendants-appellants, Doris M. Floyd and Willie Floyd (the "Floyds"), appeal from the trial court's January 21, 2021 judgment adopting the magistrate's decision and ordering a decree of foreclosure in favor of plaintiff-appellee Bank of New York Mellon ("BONYM" or the "bank"). For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} The record demonstrates that in 2006, the Floyds executed an adjustable rate note in favor of America's Wholesale Lender in the amount of $50,850 in order to finance the purchase of property located on Eldamere Avenue in Cleveland. Along with the execution of the note, the Floyds also executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for America's Wholesale Lender, a mortgage granting it the first and best lien on the property. The mortgage was recorded in January 2006 in the Cuyahoga County Recorder's Office. The note and mortgage were subsequently transferred and assigned to BONYM that was memorialized by an assignment of mortgage recorded in October 2009 in the Cuyahoga County Recorder's Office.

{¶ 3} In December 2009, the note and mortgage were modified by a loan-modification agreement that was recorded in November 2011 in the Cuyahoga County Recorder's Office. BONYM contends that the Floyds defaulted under the note, loan-modification agreement, and mortgage by failing to make payments due for October 1, 2010, and any subsequent payments. As such, the bank issued a notice of default to the Floyds in July 2013 and again in July 2014. The default was not cured, and BONYM filed the within foreclosure proceedings in March 2015.

{¶ 4} In April 2015, the Floyds filed a motion for summary judgment that the bank opposed. In September 2015, BONYM sought leave to file an amended complaint that was unopposed and granted. In November 2015, the trial court

denied the Floyds' motion for summary judgment, and the bank filed its first amended complaint.

{¶ 5} In December 2015, the Floyds filed an answer, counterclaims, and a motion to dismiss the complaint. The bank opposed the Floyds' motion to dismiss, and filed its own motion to dismiss the Floyds' counterclaims. The Floyds then filed a motion for leave to file an amended answer and counterclaims with the joinder of an additional party on March 29, 2016, that BONYM opposed. In August 2016, the trial court denied the Floyds' motion to dismiss the bank's complaint, and in September 2016, the court denied the Floyds' motion to file an amended answer and counterclaims with the joinder of an additional party. Also in September 2016, the trial court granted BONYM's motion to dismiss the Floyds' first set of counterclaims.

{¶ 6} In July 2017, the bank sought leave to file a second amended complaint that the trial court granted; the bank's second amended complaint was filed in January 2018. In February 2018, the Floyds filed a motion to dismiss the second amended complaint; the motion was denied. The Floyds then filed a second amended answer and counterclaims in November 2018. The bank moved to strike or dismiss the second set of counterclaims. The Floyds filed a motion to file their second set of counterclaims out of time, and a motion for leave to reply to the bank's motion to strike or dismiss. The trial court granted the Floyds' request to file out of time, denied the bank's motion to dismiss, and denied the Floyds' motion for leave to reply as moot.

**{¶ 7}** BONYM then filed a renewed motion to dismiss the Floyds' second set of counterclaims; the Floyds opposed the motion. The trial court granted the bank's motion to dismiss second set of counterclaims. The Floyds filed a motion for reconsideration that the trial court denied. In May 2019, the Floyds filed their second motion for summary judgment that the bank opposed. The trial court denied the Floyds' second motion for summary judgment in August 2019.

**{¶ 8}** BONYM moved for summary judgment in June 2019; the Floyds opposed. In August 2019, the magistrate issued his decision granting the bank's motion for summary judgment. The Floyds filed objections to the magistrate's decision. The trial court overruled the Floyds' objections in January 2021, and issued an order adopting the magistrate's decision and decree of foreclosure in January 2021. The Floyds now appeal, raising the following six assignments of error for our review:

> ASSIGNMENT OF ERROR NO. 1: The trial court erred to the prejudice of the appellants in adopting the magistrate's decision and granting the appellee's motion for summary judgment when numerous issues of fact exist as to who the real party in interest is. The trial court failed to construe the evidence most favorably toward the appellants.
>
> ASSIGNMENT OF ERROR NO. 2: The trial court erred in denying appellants' motion for summary judgment. The appellants have established by admissible evidence that BNYM is not entitled to enforce the note and mortgage and the court erred in allowing BNYM to use manipulated documents to obtain summary judgment.
>
> ASSIGNMENT OF ERROR NO. 3: The trial court erred by relying on the affidavit of Laura Hovis filed in support of appellee's motion for summary judgment. The trial court erred by failing to strike the affidavit as impermissible hearsay or in the alternative failing to strike Exhibits A1-A9 and sustaining appellants' motion for summary judgment.

ASSIGNMENT OF ERROR NO. 4: The trial court erred to the prejudice of the appellants in awarding [summary judgment] when BNYM failed to prove the amount of principal and interest due on the mortgage and not granting summary judgment to the appellants.

ASSIGNMENT OF ERROR NO. 5: The trial court erred in failing to consider appellants' affirmative defenses of unclean hands, and judicial estoppel. Appellants' [summary judgment] motion should have been sustained.

ASSIGNMENT OF ERROR NO. 6: The trial court erred to the prejudice of the appellants in dismissing our counterclaims.

{¶ 9} Further facts will be discussed under the assignments of error.

## Law and Analysis

{¶ 10} Appellate review of an order granting summary judgment is de novo. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.

{¶ 11} In a foreclosure action, the plaintiff is required to prove (1) it was either the holder of the note and mortgage or a party entitled to enforce those instruments; (2) the chain of assignments and transfers; (3) the mortgagor was in default under the terms of the loan; (4) all conditions had been met; and (5) the amount due. *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 62.

### BONYM's Standing

{¶ 12} In their first assignment of error, the Floyds contend that "the trial court's decision is against the manifest weight of the evidence regarding the plaintiff

being holder of the note and mortgage." According to the Floyds, both BONYM and BAC Home Loan Servicing ("BAC") are purporting to be the holders of the mortgage and loan.

{¶ 13} We initially note that the Floyds cite to previous proceedings regarding the subject property. Specifically, a foreclosure case was filed in 2009 in Cuyahoga County C.P. No. CV-09-706593, and again in 2012 in Cuyahoga County C.P. No. CV-12-778979. In the 2009 case, BONYM obtained default judgment against the Floyds. The default judgment was later vacated by the bank, and the trial court dismissed the case without prejudice. The 2012 case was also dismissed without prejudice.

{¶ 14} In their motion for summary judgment, the Floyds attempted to rely on the prior proceedings; they also cite the prior proceedings now on appeal. For example, they contend that "[d]uring the same time BONYM possessed a default judgment, BAC sent three letters dated May 2010, September 2010, and February 2012, attempting to collect on the loan and threatening us with foreclosure."

{¶ 15} Generally, a trial court may not take judicial notice of prior proceedings in the court; rather, it may only take judicial notice of prior proceedings in the immediate case. *D & B Immobilization Corp. v. Dues*, 122 Ohio App.3d 50, 53, 701 N.E.2d 32 (8th Dist.1997). The rationale for this holding is that if a court takes notice of a prior proceeding, the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court. *Id.*

{¶ 16} Further, a dismissal without prejudice, which was the case for both prior foreclosure cases, has the effect of placing the parties back in the position that they held prior to the commencement of the action. *Zimmie v. Zimmie*, 11 Ohio St.3d 94, 464 N.E.2d 142 (1984), paragraph two of the syllabus. A dismissal without prejudice has the effect of dissolving all rulings preceding the entry of dismissal. *DeVille Photography, Inc. v. Bowers*, 169 Ohio St. 267, 272, 159 N.E.2d 443 (1959). Therefore, the parties are permitted to litigate claims as if no previous suit had been commenced. *Id.*

{¶ 17} In light of the above, we disregard the Floyds' arguments relating to the 2009 and 2012 foreclosure actions.

{¶ 18} We do consider issues the Floyds raise about the versions of the note that were before the trial court in this case; the record demonstrates that there were two versions. The first version of the note contains both a blank endorsement and a specialty endorsement to BONYM via an allonge (*see* original Mar. 20, 2015 complaint, Exhibit A). The second version of the note contains the same blank endorsement that the first version contained, but the allonge containing the specialty endorsement is no longer affixed to the note (*see* Jan. 25, 2018 second amended complaint, Exhibit A). The bank offers the following explanation for the versions:

> When BONYM's Counsel received the referral for the subject Loan, it was provided a copy of the Note that contained both the blank endorsement and an affixed Allonge that contained a specialty endorsement. When the appellants served BONYM with Discovery Requests, BONYM's counsel took custody of the original note to permit

for appellants to inspect the original note. Upon review of the Original Note, BONYM's counsel discovered that at that time no Allonge containing the specialty endorsement was affixed to the Note. This discovery necessitated the Second Amended Complaint in order to plead the current and correct version of the Note.

BONYM's brief, pg. 6-7.

{¶ 19} This court has previously held that "[t]he mere fact that there were two different copies of the note in the record — one with endorsements and one without — does not mandate a finding that one of the notes was 'unauthentic' or otherwise preclude summary judgment." *Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, at ¶ 59, citing *United States Bank, N.A. v. Adams*, 6th Dist. Erie No. E-11-070, 2012-Ohio-6253, ¶ 19-20. In foreclosure cases, standing exists where a party either has a mortgage assignment or is the holder of the note at the time the complaint is filed. *CitiMortgage, Inc. v. Patterson*, 2012-Ohio-5894, 984 N.E.2d 392, ¶ 21 (8th Dist.). In this case, BONYM has met its burden of proof with regard to standing because it had both the mortgage assignment and was the holder of the note at the time the complaint was filed.

{¶ 20} Both versions of the note contain a blank endorsement and there was evidence before the trial court that BONYM had been in possession of the original note since January 2006. Specifically, in support of its motion for summary judgment, the bank attached Exhibit A-3, "Possession Statement of Ditech Financial LLC," that indicated that BONYM obtained possession of the subject note on January 17, 2006. The specialty endorsement on the allonge (that endorsed the bank) was merely a reinforcement that BONYM was the intended recipient of the

note, in addition to the bank's possession of the note containing the blank endorsement. Thus, BONYM was the party entitled to enforce the note by being the party in possession of the note with a blank endorsement. The allonge was removed from the note since it was apparently redundant to the blank endorsement.

{¶ 21} The removal of the allonge to the original note did not create an issue of material fact. Upon discovery of the present condition of the original note, BONYM amended its complaint to plead a current and correct version of the original note. Therefore, there was no genuine issue of material fact as to the different versions of the note.

{¶ 22} We also find that there was no genuine issue of material fact created by the loan modification. According to the Floyds, BONYM was not entitled to enforce the loan modification because the loan modification identified BAC as the lender. A careful review of the record shows that BAC was a loan servicer, not the lender. Other loan servicers were used as well throughout the life of the loan (the other servicers were Countrywide Home Loans Servicing, L.P.; Bank of America, N.A.; Green Tree Services, L.L.C.; Ditech Financial, L.L.C.; and Carrington Mortgage Services, L.L.C. ("Carrington")). But BONYM has been the holder of the note for almost the entire span of the subject loan (i.e., since Jan. 17, 2006).

{¶ 23} The Floyds also take issue with the fact that BONYM's original complaint contained two assignments of mortgage. The first was from MERS as nominee for America's Wholesale Lender and its successors, and assigned to BONYM. The second assignment of mortgage was a corrective assignment from

MERS as nominee for America's Wholesale Lender to BONYM. The corrective assignment of mortgage had a note that expressly stated, "This corrective assignment is to correct the assignor name on the assignment of mortgage previously recorded on January 17, 2006 as Instrument No. 200601170038 of Cuyahoga County Records." The only change in the assignor name between the two assignments of mortgage was that the first assignment included "its successors and assigns" whereas the second assignment of mortgage did not.

{¶ 24} As mentioned in the procedural history, in September 2015, BONYM sought leave to file an amended complaint. The leave, unopposed by the Floyds and granted by the trial court, was so that the correct assignment of mortgage could be pled.

{¶ 25} On November 12, 2015, BONYM filed its first amended complaint that only included the first assignment of mortgage containing the "its successors and assigns" notation for the assignor; it removed the superfluous corrective assignment of mortgage because it was never necessary to assign the mortgage in the first place. Upon careful review of the mortgage, we find that it indicates in several places that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns"; "Lender is America's Wholesale Lender"; and "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property * * *." Thus, the record

contains sufficient evidence to demonstrate that BONYM was validly assigned the mortgage.

{¶ 26} Moreover, because BONYM was in possession of the blank endorsed note, it was the equitable assignee of the mortgage. *See Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, at ¶ 65, citing *U.S. Bank N.A. v. Marino*, 181 Ohio App.3d 328, 2009-Ohio-1178, 908 N.E.2d 1032, ¶ 52 (7th Dist.) ("Even if the assignment of mortgage from Argent to Deutsche Bank was invalid, Deutsche Bank would still be entitled to enforce the mortgage because under Ohio law, the mortgage 'follows the note' it secures.").

{¶ 27} In light of the above, the first assignment of error is overruled.

**BONYM's Documentation in Support of Summary Judgment**

{¶ 28} In their second assignment of error, the Floyds contend that BONYM relied on "manipulated documents" to obtain summary judgment. They argue that the trial court should have considered documentation presented in the dismissed 2009 and 2012 foreclosure cases. But as already discussed, those cases were not before the trial court and cannot be part of our consideration here.

{¶ 29} The relevant documentation in this case, as set forth in the affidavit submitted by BONYM, established the following:

> BONYM's records contain a Note executed by Doris M. Floyd and Willie L. Floyd htta[1] Willie Lee Floyd in the amount of $50,850.00. The Note is endorsed to BONYM in blank. At some time between when the Note was executed by the Borrowers on January 6, 2006 and January 17, 2006, David A. Spector, Managing Director for Countrywide Home

---

[1]In terms of real estate transactions, "htta" means "having taken title as."

Loans, Inc. doing business as America's Wholesale Lender executed a blank indorsement. The Note was then transferred to BONYM, who has been in possession of the blank indorsed Note since January 17, 2006. Reimer Law Co. has been in custody of the original Note on behalf of the holder, BONYM, from December 5, 2016 and as of the date of this Affidavit.

(Citations to exhibits omitted.) Affidavit of Laura Hovis ("Hovis affidavit"), ¶ 6, submitted in support of BONYM's motion for summary judgment.

**{¶ 30}** The above averment and the corresponding documentation attached to the bank's summary judgment motion were sufficient evidence to establish that BONYM was the holder of the original note, with standing to enforce it. Likewise, for the reasons already discussed, there was sufficient evidence of a proper mortgage assignment to BONYM.

**{¶ 31}** In light of the above, the second assignment of error is overruled.

**Hovis's Affidavit**

**{¶ 32}** The Floyds' third assignment of error challenges Hovis's affidavit and the accompanying exhibits she referred to. According to the Floyds, Hovis lacked personal knowledge of the matters she averred to, and the accompanying documentation referred to in her affidavit was inadmissible hearsay. Hovis, a default document senior analyst with Carrington, averred in relevant part as follows:

1. I am employed by Carrington Mortgage Services, LLC ("Carrington") as a(n) Default Document, Sr. Analyst, and am authorized to execute this affidavit on behalf of Carrington, as servicer for The Bank of New York Mellon fka The Bank of New York as trustee for the certificate holders CWABS Inc., asset backed certificates, Series 2006-5 ("BONYM"). The statements made in this Affidavit are based on my personal knowledge.

2. I am over the age of 18 and competent to testify as to the matters contained herein.

* * *

4. In the regular performance of my job functions in my position, I am familiar with business records maintained by Bank of America, N.A., Green Tree Servicing, LLC, Ditech and Carrington for the purpose of servicing mortgage loans on behalf of BONYM. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Carrington. Further, I am familiar with Carrington's business records maintained by Carrington which incorporate the records of their predecessors in interest, and the prior servicers of this mortgage loan, which are maintained and relied upon the regular course of business by Carrington. It is the regular practice of Carrington's mortgage servicing business to make these records and rely on the records from prior servicers, which are incorporated, maintained, and relied upon in the ordinary course of business.

5. BONYM's business records that relate to the Borrowers' loan that I reviewed and relied upon for the statements made in this Affidavit include but are not limited to the Note, Certificate of Fictitious Name Registration, Note Possession Statement, Loan Modification Agreement, Mortgage, Assignment of Mortgage, Demand Letters, Payment History, and Carrington's electronic servicing system. True and exact copies of the Note (Ex. "A-l"), Certificate of Fictitious Name Registration (Ex. "A-2"), Note Possession Statement (Ex. "A-3"), Loan Modification Agreement (Ex. "A-4"), Mortgage (Ex. "A-5"), Assignment of Mortgage (Ex. "A-6"), 2013 Demand Letter (Ex. "A-7"), 2014 Demand Letter (Ex. "A-8"), and Payment History (Ex. "A-9"), are attached hereto and incorporated herein by reference.

6. BONYM's records contain a Note executed by Doris M. Floyd and Willie L. Floyd htta Willie Lee Floyd in the amount of $50,850.00. The Note is endorsed to BONYM in blank (See, Ex. A-l.) At some time between when the Note was executed by the Borrowers on January 6, 2006 and January 17, 2006, David A. Spector, Managing Director for Countrywide Home Loans, Inc. doing business as America's Wholesale Lender (See, Ex. A-2), executed a blank endorsement (See, Ex. A-l). The Note was then transferred to BONYM, who has been in possession of the blank endorsed Note since January 17, 2006 (See, Ex. A-3).

Reimer Law Co. has been in custody of the original Note on behalf of the holder, BONYM, from December 5, 2016 and as of the date of this Affidavit.

7. BONYM's records also reflect that the Note is secured by a Mortgage on the real property located at 15506 Eldamere Ave., Cleveland, Ohio 44128. The Mortgage was recorded in the Public Records of Cuyahoga County, Ohio as Instrument No. 200601170038. The Mortgage was assigned to BONYM prior to the filing of the Complaint. (See, Ex. A-5, A-6.).

8. BONYM's records also contain a Loan Modification Agreement dated December 28, 2009. The Loan Modification Agreement was recorded in the Public Records of Cuyahoga County, Ohio on November 4, 2011 as Instrument No. 201111040173. (See, Ex. A-4.).

9. Borrowers have defaulted under the terms of the Note, Loan Modification, and Mortgage by failing to submit the payment due October 1, 2010 and subsequent installments. On July 23, 2013, Ditech on behalf of BONYM caused a Notice of Right to Cure Default to be sent via First Class Mail to the Borrower[s] at their notice address * * * See, Ex. "A-7"). Further, Ditech on behalf of BONYM issued a second Notice of Right to Cure Default on July 30, 2014 (See, Ex. uA-8"). The Borrowers' default in payment on the Note, Loan Modification and Mortgage has not been cured, and Ditech on behalf of BONYM has accelerated the Note payments making the entire balance due and owing in accordance with the terms of the.

10. The balance due on the Loan as of June 12, 2019 is the principal sum of $56,359.74 plus interest at 8.42% per annum from September 1, 2010, plus sums advanced for taxes, insurance, property preservation, and amounts otherwise expended. (See, Ex. "A-9").

**{¶ 33}** Pursuant to Civ.R. 56(E), supporting and opposing affidavits shall: (1) be made on personal knowledge, (2) set forth such facts as would be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. *Olverson v. Butler*, 45 Ohio App.2d 9, 340 N.E.2d 436 (10th Dist.1975); Civ.R. 56(E). "Personal knowledge" is "knowledge gained through firsthand observation or experience, as distinguished from a belief based on

what someone else has said." *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 26.

**{¶ 34}** "In foreclosure actions, the affidavit of a loan servicing agent employee with personal knowledge provides sufficient evidentiary support for summary judgment in favor of the mortgagee." *Fifth Third Mtge. Co. v. Salahuddin*, 10th Dist. Franklin No. 13AP-945, 2014-Ohio-3304, ¶ 15 (affidavit of bank's loan servicer was sufficient for purposes of summary judgment when he averred that the bank had been in possession of the original note since its origination and that the defendant was in default under the terms of the note and mortgage due to a failure to make the required payments), citing *Regions Bank v. Seimer*, 10th Dist. Franklin No. 13AP-542, 2014-Ohio-95, ¶ 19 (noting that several appellate courts have found that, in a foreclosure action, the affidavit of a loan servicing agent employee with personal knowledge provides sufficient evidentiary support for summary judgment in favor of the mortgagee); *Bank of New York Mellon v. Putman*, 12th Dist. Butler No. CA2012-12-267, 2014-Ohio-1796, ¶ 12 (finding that a review of the case law reveals that affidavits from servicing agents are routinely used to support a motion for summary judgment in a foreclosure action); *Chase Home, L.L.C. v. Dougherty*, 10th Dist. Franklin No. 12AP-546, 2013-Ohio-1464; *Deutsche Bank Natl. Trust Co. v. Germano*, 11th Dist. Portage No. 2012-P-0024, 2012-Ohio-5833; *Deutsche Bank Natl. Trust Co. v. Ingle*, 8th Dist. Cuyahoga No. 92487, 2009-Ohio-3886, ¶ 18 (affidavit of bank's loan servicing agent sufficient to show bank was the real party in interest), and *Bank of New York v. Dobbs*, 5th Dist. Knox No. 2009-CA-000002,

2009-Ohio-4742, ¶ 40 (affidavit of loan servicing agent, even though not employed by bank, sufficient to provide authentication of documents).

**{¶ 35}** Here, Hovis testified that she had personal knowledge of the matters to which she averred, and, as an employee of the loan servicing agent for the bank, she was in the position to have such knowledge. Therefore, for these reasons, we reject the Floyds' argument that the trial court should have stricken Hovis's affidavit because she lacked the requisite personal knowledge.

**{¶ 36}** We also reject the Floyds' argument that the attached documentation to Hovis's affidavit constituted inadmissible hearsay. Rather, the documents constituted an exception to the hearsay prohibition as records of regularly conducted activity pursuant to Evid.R. 803(6). Hearsay is any statement, other than one which is made by the declarant at trial that is offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Under Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence. Evid.R. 803(6) provides an exception to the hearsay rule for business records of regularly conducted activity that is defined as follows:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph

includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶ 37} Thus, to qualify for the business records exception, a record must meet the following criteria (1) the record must be one recorded regularly in a regularly conducted activity, (2) a person with knowledge of the act, event, or condition recorded must have made the record, (3) it must have been recorded at or near the time of the act, event, or condition, and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171. Even when these prerequisites are met, however, the trial court may exclude a record "if 'the source of information or the method or circumstances of preparation indicate [a] lack of trustworthiness.'" *Id.*, quoting Evid.R. 803(6). A trial court abuses its discretion when it admits a business record in the absence of an adequate foundation to establish admissibility under Evid.R. 803(6).

{¶ 38} Evid.R. 901 governs authentication or identification of evidence. It states, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Evid.R. 901(B)(1) provides that the testimony of a witness with knowledge, who testifies that a matter is what it is claimed to be, conforms with the requirements of Evid.R. 901. Thus, "'any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole

or in part, the foundation for identification.'" *TPI Asset Mgt. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, 950 N.E.2d 1018, ¶ 13 (2d Dist.), quoting Weissenberger's *Ohio Evidence Treatise*, Section 901.2 (2010). Thus, verification of documents attached to an affidavit supporting or opposing a motion for summary judgment is generally satisfied by an appropriate averment in the affidavit itself, for example, that "such copies are true copies and reproductions." *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981).

{¶ 39} There exists competent authority that a loan servicing agent may properly authenticate copies of business records. The affidavit of the bank's loan-servicing agent provides a sufficient foundation for the admissibility of the relevant loan documents as business records under Evid.R. 803(6). *Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 39; *Fifth Third Mtge. Co. v. Bell*, 12th Dist. Madison No. CA2013-02-003, 2013-Ohio-3678, ¶ 28 (loan servicing agent's affidavit properly authenticated the attached documents, including the note and mortgage); *U.S. Bank, N.A. v. Martin*, 7th Dist. Mahoning No. 13 MA 107, 2014-Ohio-3874, ¶ 34 (summary judgment affidavit of loan servicer's employee was sufficient to authenticate notice of intent to accelerate where affidavit stated that the copy of the notice of intent to accelerate was a true and accurate copy of notice); *Regions Bank v. Seimer*, 10th Dist. Franklin No. 13AP-542, 2014-Ohio-95, ¶ 19, citing *Dobbs*, 5th Dist. Knox No. 2009-CA-000002, 2009-Ohio-4742, at ¶ 40 (even though not employed by the bank, affidavit of bank's loan servicing agent was sufficient to authenticate documents). It is clear that a witness providing the

foundation for a recorded business activity need not have firsthand knowledge of the transaction. *Najar* at *id.*, citing *U.S. Bank N.A. v. Wilkens*, 8th Dist. Cuyahoga No. 96617, 2012-Ohio-1038, ¶ 46, citing *Moore v. Vandemark Co., Inc.*, 12th Dist. Clermont No. CA2003-07-063, 2004-Ohio-4313, ¶ 18.

**{¶ 40}** In light of the above, we find that Hovis properly authenticated the copies of the business records attached to her affidavit. For all of the reasons discussed, we find the trial court did not err when it relied upon Hovis's affidavit in rendering summary judgment in favor of BOYNM. Therefore, the third assignment of error is overruled.

**Charges**

**{¶ 41}** In their fourth assignment of error, the Floyds challenge a $414.88 charge dated June 21, 2010, and a $3,000 charge dated April 28, 2010. Although the Floyds did raise issues as to the payment histories authenticated in BONYM's affidavit, they did not raise any challenge to the above-mentioned charges at the trial-court level. It is well established that an appellant cannot raise any new issues for the first time on appeal; the failure to raise an issue at the trial-court level waives it on appeal. *First Horizon Home Loan Corp. v. Roberts*, 8th Dist. Cuyahoga No. 92367, 2010-Ohio-60, ¶ 10.

**{¶ 42}** For the reasons set forth above, the fourth assignment of error is overruled.

**Unclean Hands and Judicial Estoppel**

{¶ 43} In their fifth assignment of error, the Floyds contend that the trial court erred by not considering their affirmative defenses of unclean hands and judicial estoppel.

{¶ 44} In regard to judicial estoppel, that can apply to prevent a party from taking a position in an action that is inconsistent with a position taken by the party in a prior judicial proceeding. *See Fish v. Bd. of Commrs.*, 13 Ohio St.2d 99, 102, 234 N.E.2d 590 (1968). However, judicial estoppel only applies where the position was accepted by the court. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25.

{¶ 45} The Floyds contend that the bank was estopped from raising arguments in this case because they were allegedly inconsistent to arguments it made in the 2009 and 2012 foreclosure cases. As previously discussed, the dismissal without prejudice of those cases operates as if the cases had never been filed. Thus, those issues were not properly before the trial court in this case and there was no error in the court declining to address them.

{¶ 46} As it relates to their claim of unclean hands, the Floyds raised it as both an affirmative defense and a counterclaim. In September 2016, the trial court dismissed the Floyds' first set of counterclaims that included a claim for unclean hands for failure to state a claim for which relief could be granted. Their second set of counterclaims that dealt with the same set of issues that they allege created

unclean hands, was also dismissed for failure to state a claim for which relief could be granted on July 12, 2019.

{¶ 47} We review rulings on Civ.R. 12(B)(6) motions to dismiss under a de novo standard. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. * * * Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." *NorthPoint Props. v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). "For a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her [or him] to relief.'" *Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 47 (8th Dist.), quoting *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2018-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.).

{¶ 48} Under the doctrine of unclean hands, "one who seeks equity must do equity." *State ex rel. DeWine v. Shadyside Party Ctr.*, 7th Dist. Belmont No. 13 BE 26, 2014-Ohio-2357, 13 N.E.3d 684, ¶ 29, citing *Basil v. Vincello*, 50 Ohio St.3d 185, 553 N.E.2d 602 (1990). The doctrine of unclean hands requires that the party invoking equity "'not be guilty of reprehensible conduct'" regarding the subject matter of the action. *Id.*, quoting *Basil*. A foreclosure action is equitable in nature. *Buckeye Retirement Co. L.L.C. v. Walling*, 7th Dist. Mahoning No. 05 MA 119, 2006-Ohio-7059, ¶ 16. "'[T]he unclean hands doctrine should not be imposed where

a party has legal remedies available to address an opposing party's asserted misconduct.'" *Deutsche Bank Natl. Trust Co. v. Pevarski*, 187 Ohio App.3d 455, 2010-Ohio-785, 932 N.E.2d 887, ¶ 24, (4th Dist.), quoting *Safranek v. Safranek*, 8th Dist. Cuyahoga No. 80413, 2002-Ohio-5066.

**{¶ 49}** The crux of the Floyds' argument is that BONYM failed to timely dismiss the 2009 foreclosure case after the Floyds entered into the loan modification. Under the loan modification, the Floyds "promise[d] to make monthly payments of principal and interest of $456.64 beginning on the 1st day of February, 2010." A review of the Floyds' payment history demonstrates that they were not timely in making their payments under the loan modification. They made sporadic payments, some being made in March 2010, then June 2010, then October 2010.

**{¶ 50}** Moreover, the Floyds had legal remedies that they could have pursued in the 2009 foreclosure action, such as opposing the bank's motion for default judgment, or moving to vacate the default judgment. But regardless of their claims of impropriety in the 2009 foreclosure action, the default judgment was eventually vacated and the case was dismissed. Likewise, the 2012 foreclosure action was dismissed.

**{¶ 51}** On this record, the fifth assignment of error is overruled.

**Other Counterclaims**

**{¶ 52}** The sixth and final assignment of error challenges the dismissal of the remainder of the Floyds' counterclaims that were for (1) violating the Federal Debt

Collection Practices Act ("FDCPA" or "the Act"); (2) intentional infliction of emotional distress based on breach of contract; (3) slander of title; (4) quiet title; (5) punitive damages; and (6) declaratory judgment. For the reasons set forth below, we find that the trial court properly dismissed the claims.

**FDCPA**

**{¶ 53}** The Act involves restrictions against false or misleading representations regarding mortgage debt and the collection thereof. The general proscription provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e.

**{¶ 54}** The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors"; it is distinguishable in its application to creditors. 15 U.S.C. 1692. A debt collector refers to "any business the principal purpose of which is the collection of any debts * * *." A creditor, on the other hand, refers to an entity that "offers or extends credit creating a debt or to whom a debt is owed."

**{¶ 55}** The Floyds' counterclaim failed as a matter of law. It is well established that creditors and mortgage service companies are not "debt collectors" and are not subject to liability under the FDCPA. *RBS Citizens, N.A. v. Zigdon*, 8th Dist. Cuyahoga No. 93945, 2010-Ohio-3511, ¶ 41, citing *Scott v. Wells Fargo Home Mtge. Inc.*, 326 F.Supp.2d 709 (E.D.Va.2003); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir.2003). Thus, BONYM is not subject to the FDCPA because it is not a debt collector as envisioned by the Act.

**Intentional Infliction of Emotional Distress**

{¶ 56} The intentional infliction of emotional distress occurs when "one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), *abrogated on other grounds*, *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051. To prevail on such a claim, the Floyds would have had to prove that: (1) BONYM either intended to cause emotional distress, or knew or should have known that its conduct would result in serious emotional distress to the Floyds; (2) BONYM's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) the bank's actions proximately caused psychological injury to the Floyds; and (4) the Floyds suffered serious emotional distress of a nature no reasonable person could be expected to endure. *Rhoades v. Chase Bank*, 10th Dist. Franklin No. 10AP-469, 2010-Ohio-6537, ¶ 15.

{¶ 57} The Ohio Supreme Court has described "serious emotional distress" as "emotional injury which is both severe and debilitating." *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983). Although the Floyds alleged that they suffered with issues such as sleeplessness, stress, and elevated blood pressure, none of the allegations in their counterclaims rose to the level of severe and debilitating. On this record, their claim of intentional emotional distress failed as a matter of law.

**Slander of Title**

**{¶ 58}** Slander of title is a tort action "against one who falsely and maliciously defames title to property and causes some special pecuniary damages or loss." *Acme Constr. Co. v. Continental Natl. Indemn. Co.*, 8th Dist. Cuyahoga No. 81402, 2003-Ohio-434, ¶ 46. To succeed on a claim for slander of title, the claimant must prove the following "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Green v. Lemarr*, 139 Ohio App.3d 414, 430-431, 744 N.E.2d 212 (2d Dist.2000).

**{¶ 59}** In their slander of title claim, the Floyds alleged that the bank was "claiming we were in default in September 1, 2010. Plaintiff's payment records reflect payments from September 2010." BONYM's amended complaint, alleges that "there is due and unpaid thereon the sum of $56,359.74 plus interest at the rate of 8.42% per annum from September 1, 2010." Thus, according to the complaint, the default began in October 1, 2010, and that interest is due from September 1, 2010.

**{¶ 60}** Moreover, the lien on the Floyds' title is the mortgage. The Floyds are not contending that they did not agree to mortgage the property. The record demonstrates that there was no false statement as to the mortgage or the assignment of mortgage. Neither the mortgage or the assignment of mortgage caused the Floyds damages. BONYM was the real party in interest entitled to judgment on the note

and the mortgage, the Floyds are parties to the note and the mortgage, and there was a default in payments under those agreements. There simply was no evidence that BONYM published untruthful allegations that the Floyds were in default of their mortgage. Thus, the Floyds' slander of title claim failed as a matter of law.

**Quiet Title**

{¶ 61} "An action for quiet title permits a person in possession of real property to bring an action against a person who claims an adverse interest for the purpose of determining such adverse interest." R.C. 5303.01. Quiet title actions are generally used to remove a cloud on one's title to real property and are considered equitable in nature. *Maasen v. Zopff*, 12th Dist. Warren Nos. 98-10-135, 98-10-138, and 98-12-153, 1999 Ohio App. LEXIS 3422, 11 (July 26, 1999); *W.C. McBride, Inc. v. Murphy*, 111 Ohio St. 443, 447, 145 N.E. 855 (1924). "'A cloud on the title to property is an outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and on its face has that effect, but can be shown by extrinsic proof to be invalid or inapplicable to the estate in question.'" (Citation omitted.) *Gasper v. Bank of Am., N.A.*, 9th Dist. Medina No. 17CA0091-M, 2019-Ohio-1150, ¶ 31.

{¶ 62} The existence of defenses to a foreclosure action do not render the mortgage itself an invalid encumbrance on the property, but rather only potentially affect a plaintiff's ability to foreclose on the mortgage at a particular time. This court explained that point in *Bank of N.Y. Mellon Trust Co., N.A. v. Unger*, 8th Dist. Cuyahoga No. 97315, 2012-Ohio-1950.

**{¶ 63}** In *Unger*, the bank sued the borrowers for a default on a note and foreclosure under a mortgage. The borrowers filed a counterclaim seeking to quiet title on the grounds that the assignments of the note and mortgage were invalid. The borrowers alleged that the fraudulent assignments constituted a cloud on their title. In upholding the trial court's ruling that the borrowers had not set forth a valid quiet title action, this court explained as follows:

> The [borrowers] alternatively argue they are entitled to quiet title under R.C. 5303.01 because they are in possession of real estate, and Mellon claims an "adverse interest" in the property. The [borrowers] claim Mellon and certain other parties engaged or failed to engage in various activities that nullified the mortgage assignments and the mortgage. They are seeking to set aside the mortgage assignments and mortgage as a result of these activities, but they are unable to do so under R.C. 5303.01.
>
> The mortgage assignments transferred the right to foreclose on the [borrowers'] property upon default of the note, from SouthStar, to Bank of New York, to Mellon. The [borrowers] voluntarily signed the mortgage, and agreed to a lien on their property as security for repayment of the note. The mortgage was properly recorded with the Cuyahoga County Recorder's Office. "A mortgage is * * * nothing more than a lien on the premises, the purpose of which is to put other lien holders on notice that there is a prior claim on the premises." R.C. 5301.233; *GMAC Mtge. Corp. v. McElroy*, 5th Dist. Stark No. 2004-CA-00380, 2005-Ohio-2837, ¶ 16. * * *. The mortgage is not a "cloud" on the [borrowers' title], and neither are the mortgage assignments. The [borrowers] are not, therefore, entitled to "quiet title" against Mellon under R.C. 5303.01.

*Id.* at ¶ 36-37.

**{¶ 64}** The Floyds are not alleging that they did not voluntarily grant the mortgage to secure repayment of the note or that the mortgage was not properly recorded. They seek to quiet title based on allegations that BONYM is not in possession of the note and did not satisfy certain conditions precedent.

**{¶ 65}** Assuming the Floyds could successfully prevail on these defenses, this would only hinder the bank's ability to pursue foreclosure, but would not void the mortgage. The mortgage would remain a valid encumbrance on the property to be pursued by the actual holder of the note or by the bank at a future date upon satisfying the conditions precedent. The purpose of a quiet title action is to remove a cloud on a title. As explained by this court in *Unger*, a validly entered into and properly recorded mortgage is not a "cloud" on a title. As there are no allegations challenging the validity of the mortgage, just BOYNM's ability to enforce the terms of the mortgage, the Floyds' counterclaim failed to state a claim for which relief may be granted.

## Punitive Damages

**{¶ 66}** Pursuant to statute, a plaintiff must be awarded some measure of compensatory damages to receive punitive damages. *See* R.C. 2315.21(C)(1) and (2) (allowing punitive damages only when (1) the defendant acted with either malice or aggravated or egregious fraud and (2) the trier of fact awards the plaintiff compensatory damages). *See Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 447, 659 N.E.2d 1242 (1996) ("As we have held time and again, punitive damages may not be awarded when a jury fails to award compensatory damages."). The compensatory-damages requirement prevents plaintiffs from bringing cases solely for an award of punitive damages; they are not independent remedies. "Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future. No civil cause of action in this

state may be maintained simply for punitive damages." *Bishop v. Grdina*, 20 Ohio St.3d 26, 28, 485 N.E.2d 704 (1985); *see also Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 650, 635 N.E.2d 331 (1994) ("[P]unitive damages are awarded as a mere incident of the cause of action in which they are sought. * * * Thus, compensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered.").

**{¶ 67}** The Floyds contend that they should be awarded punitive damages for their FDCPA, intentional infliction of emotional distress, and slander of title claims. However, as discussed above, those claims were properly dismissed. Because a prerequisite for punitive damages is that compensatory damages must first be awarded, the Floyds' claim for punitive damages was barred.

**Declaratory Judgment**

**{¶ 68}** Although there was no specific declaratory judgment count in their counterclaims, the Floyds requested the trial court "to enter its judgment against Plaintiff declaring the Mortgage, null and void, canceling the Mortgage of record; quieting title to the property purportedly owned by Plaintiff and against Defendant and all person claiming under Defendant." For all the reasons discussed above, the Floyds' request was without merit.

**{¶ 69}** The sixth assignment of error is overruled.

## Conclusion

**{¶ 70}** The trial court did not err in overruling the Floyds' objections to the magistrate's decision and adopting the magistrate's decision granting judgment in

favor of BONYM because there were no genuine issues of material fact left for the trial court to determine. Our de novo review of the record demonstrates that BONYM presented the appropriate documentation to establish that (1) it is the holder of the note and loan modification; (2) it is the assignee of the mortgage; (3) the Floyds are in default under same; (4) that all conditions precedent have been met; and (5) the amount owed under the note, mortgage, and loan modification agreement.

**{¶ 71}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, PRESIDING JUDGE

LARRY A. JONES, SR., J.,* and
MARY EILEEN KILBANE, J., CONCUR

* Judge Larry A. Jones, Sr., concurred in this Journal Entry and Opinion prior to his death on October 7, 2021.

(The Ohio Constitution requires the concurrence of at least two judges when rendering a decision of a court of appeals. Therefore, this announcement of decision is in compliance with constitutional requirements. *See State v. Pembaur*, 69 Ohio St.2d 110, 430 N.E.2d 1331 (1982).)