[Cite as *In re F.T.*, 2023-Ohio-191.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

IN THE MATTER OF:              :
                              :
    F.T.,                     :       Case No. 22CA17
                              :
    Adjudicated Dependent Child.  :
                              :
                              :       <u>DECISION AND JUDGMENT</u>
                              :       <u>ENTRY</u>
                              :
                              :

---

**<u>APPEARANCES</u>**:

Brian A. Smith, Fairlawn, Ohio, for Appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Jennifer L. Ater, Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

---

Smith, P.J.

{¶1} Appellant, W.L., appeals the trial court's decision that granted permanent custody of his one-year-old biological child, F.T., to South Central Ohio Job and Family Services, Children's Division ("the agency"). Appellant raises five assignments of error and argues that (1) the trial court's judgment placing the child in the agency's temporary custody is void because the court did not obtain personal jurisdiction over him due to lack of proper service, (2) the trial court's judgment placing the child in the

agency's permanent custody is void because the court did not obtain personal jurisdiction over him due to lack of proper service, (3) trial counsel was ineffective for failing to object to the lack of proper service, (4) the trial court's decision is against the manifest weight of the evidence, and (5) the agency failed to use reasonable efforts to attempt to place the child with Appellant. For the reasons that follow, we do not find any merit to Appellant's assignments of error. Therefore, we overrule his assignments of error and affirm the trial court's judgment.

## FACTS

{¶2} On March 19, 2021, the agency filed a complaint that alleged the child is an abused child and that requested the court to place the child in its temporary custody. The attached statement of facts (dated March 16, 2021) alleged that in early January 2021, the agency received a report regarding the child's mother. The report indicated that the mother had presented to the hospital to give birth to the child and was visibly under the influence. The mother had informed medical personnel that she had used heroin two hours before her arrival at the hospital. Her drug screen, however, returned positive for cocaine and marijuana.

{¶3} The mother spoke with an agency caseworker and admitted that she used drugs during her pregnancy. She stated that she might know the

identity of the baby's father, but she would not give the caseworker any further information. Four days after the child's birth, the caseworker learned that the baby's urine screen returned positive for cocaine.

{¶4} On January 12, 2021, while the baby was still in the hospital, the caseworker heard that Appellant called the hospital and claimed to be the baby's father. The caseworker phoned Appellant on January 12 and 13, but she did not reach him directly. Instead, she left Appellant a message to contact her.

{¶5} Eight days after the child's birth, the mother died in a car accident. The agency subsequently requested ex parte temporary emergency custody of the child, which the court granted.[1]

{¶6} On March 19, 2021, the agency asked the court to serve "the unknown father" of the child by posting on the Ross County Ohio Juvenile Court's website and by ordinary mail. The attached affidavit of publication by posting and mail stated that the agency had "made reasonable efforts to determine the residence of the unknown father, including: telephone contact with possible fathers & requests for DNA testing."

---

[1] We observe that the record transmitted on appeal does not contain any documents that predate the filing of the March 19, 2021 complaint. The agency states in its brief that it dismissed the original complaint and refiled the complaint on March 19, 2021. We also note that Appellant has not disputed that the child has been in the agency's temporary custody since shortly after her birth.

{¶7} On March 31, 2021, the magistrate entered a decision indicating that the case "came on for Arraignment on March 30, 2021." The magistrate found that "the unknown father has been served and failed to appear" and continued the child in the agency's temporary custody.

{¶8} On April 15, 2021, the court found that Appellant is the child's biological father. Shortly thereafter, the court added Appellant as a party to the case and issued a summons to Appellant with an address in Londonderry, Ohio. It was returned with a notation that Appellant no longer lived at that address.

{¶9} On May 21, 2021, the agency filed a motion to serve Appellant by posting and by ordinary mail. Additionally, another summons was sent to Appellant at an address in Chillicothe. Appellant later entered an appearance and requested the court to appoint counsel to represent him.

{¶10} On June 14, 2021, the court held a hearing. The father's counsel attended and indicated that Appellant was in a rehabilitation center. She stated that Appellant agreed "to the stipulation, to the alleged drug use during [the mother's] pregnancy, and the child being born positive, that this case needs to go forward." At the conclusion of the hearing, the magistrate stated that "the Court [found] the child to be an abused child."

{¶11} On June 21, 2021, the magistrate adjudicated the child a dependent child.[2] The magistrate found that the agency has used and continues to use reasonable efforts to place the child with Appellant. On that same date, the trial court adopted the magistrate's decision.

{¶12} On June 25, 2021, the magistrate entered a dispositional order that continued the child in the agency's temporary custody. The magistrate again determined that the agency used reasonable efforts to prevent the child's continued removal from the home and to make it possible for the child to safely return home. On that same date, the trial court adopted the magistrate's decision.

{¶13} On February 28, 2022, the agency filed a motion that requested permanent custody of the child. The agency alleged that the child has been in its temporary custody since January 18, 2021, that the child cannot and should not be placed with Appellant within a reasonable time, and that placing the child in its permanent custody is in the child's best interest. The agency asked the court to serve Appellant by posting and by ordinary mail.

{¶14} On April 25, 2022, the court held a hearing to consider the agency's permanent custody motion. Prism Behavioral Health Care

---

[2] We observe that the complaint alleged that the child is an abused child and that at the adjudicatory hearing, the magistrate found the child to be an abused child. The journal entry, however, states that the court adjudicated the child a dependent child. The trial court retains authority to enter a nunc pro tunc entry to ensure that the record reflects what the court actually decided. *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 163-164, 656 N.E.2d 1288 (1995) ("courts and administrative tribunals possess inherent authority to correct errors in judgment entries so that the record speaks the truth").

counselor Scott Patrick testified that in June 2021, he started alcohol-and-drug treatment services with Appellant. Patrick explained that Appellant's treatment goals included (1) abstaining from using mind-altering substances and alcohol, (2) complying with any medical requirements and any suggested treatment, (3) finding adequate housing and employment, (4) staying in touch with the agency, and (5) continuing to work on the agency's case plan.

{¶15} Patrick stated that Appellant's attendance "dropped off in December of 2021," and that he "didn't see him that month or most of January 2022." Appellant re-engaged with Patrick on January 20, 2022, and he remained compliant until "the last couple of weeks" before the permanent custody hearing. Patrick reported that Appellant had three positive drug screens between January 20, 2022, and the end of March 2022, and that Appellant was discharged from the program on April 18, 2022, due to noncompliance.

{¶16} The child's foster father testified that the child has been in his and his wife's care since January 19, 2021. He stated that he and his wife are bonded to the child and that they plan to adopt her if the possibility arises.

{¶17} Caseworker Crystal Puckett stated that the agency became involved with the family upon learning that the child had tested positive for drugs at birth. At the time, the baby's father was not known. About one week later, the child's mother died in a car accident, and the agency obtained temporary custody of the child.

{¶18} Puckett explained that once genetic testing confirmed Appellant as the child's biological father, the agency added him to the case plan. The case plan required Appellant to complete parenting classes, obtain alcohol-and-drug counseling, maintain stable housing, consistently communicate with the agency, and consistently attend visits with the child. Puckett stated that Appellant consistently visited the child, except for a period of time between December 2021 and January 2022, and that Appellant completed parenting classes. Puckett testified that Appellant has not, however, complied with any of the remaining case plan requirements.

{¶19} Puckett reported that Appellant did not obtain stable housing. She explained that during the pendency of the case, Appellant lived with his sister, then his mother, and then moved back in with his sister. In December 2021, Puckett did not know where Appellant had been living. Puckett indicated that she tried contacting Appellant in December 2021, but she was unable to locate him until January 2022. She met Appellant on January 20,

2022, and he refused to give her the location of his current residence. Thus, she does not know where he presently lives. Puckett additionally explained that she helped Appellant obtain a housing voucher that he received around three weeks before the permanent custody hearing.

{¶20} Puckett further reported that Appellant has not maintained regular contact with the agency. Puckett stated that she tried reaching him via telephone, through his treatment provider, and by going to his last known address (his sister's house).

{¶21} Puckett indicated that she has concerns about placing the child with Appellant. She explained that Appellant "gets very angry easily" and is "very * * * volatile." Puckett further stated that Appellant has a history of domestic violence.

{¶22} Appellant testified that for the past week, he has been residing at the same address. Before that, he was staying at a hotel. Appellant explained that he still is waiting to find a place to rent, and he thinks that with a little more time, he would be able to take custody of the child.

{¶23} On cross-examination, Appellant clarified that he currently is living with a friend and the friend's wife until Appellant finds a place of his own. Appellant disputed the testimony that he was discharged from Prism because he could not be reached, failed to attend sessions, and tested

positive for drugs three times within a three-month period. Appellant further stated that he has a job and that the agency knew that he had a job. He did not, however, give the agency any proof of his employment.

{¶24} Counsel for the agency asked Appellant whether he had informed Puckett that he had not been in contact with the agency from December 2021 through January 2022, because he "needed to take a break from the case." Appellant responded that he did not tell Puckett that he needed to take a break.

{¶25} The agency called Puckett as a rebuttal witness. She stated that when Appellant reconnected with her in January 2022, Appellant informed her that he had not been in touch with her because "he was taking a break."

{¶26} After the hearing, the court granted the agency permanent custody of the child. The court found that the child cannot be placed with either parent "within a reasonable time and/or should not be placed with them." The court noted that the child's mother is deceased and that Appellant failed to complete "significant portions of the case plan." The court stated that "[o]ther than the Parenting Class requirement [Appellant] has not completed any portion of the case plan."

{¶27} The court found that Appellant failed to complete an alcohol-and-drug treatment program and pointed out that he was discharged due to

noncompliance shortly before the permanent custody hearing. Appellant also continued to test positive for alcohol, fentanyl, and methamphetamines between the end of January 2022, and March 31, 2022.

{¶28} The court further found that Appellant failed to maintain stable housing. The court noted that over the past year, he lived with his sister, his mother, with his sister again, "at some unnamed hotel," and with a friend.

{¶29} The court also stated that Appellant did not maintain consistent contact with the caseworker and that Appellant "has been angry/volatile with his relationship with the caseworker."

{¶30} The court additionally determined that placing the child in the agency's permanent custody is in the child's best interest. The court observed that Appellant did not consistently visit the child and stated that due to Appellant's inconsistent visits, "it's very difficult to determine if there is any father/daughter bond." On the other hand, the court found that the child "has a very strong bond with her foster parents" and that she "is doing well in foster care." The court also noted that the child's guardian ad litem recommended that the court place the child in the agency's permanent custody. The court further determined that the child cannot achieve permanency without granting the agency permanent custody. The court additionally found that the agency used reasonable efforts to place the child

with Appellant "by attempting to provide case management services, referrals to AOD providers, referrals for housing, and visitation." The court thus placed the child in the agency's permanent custody. This appeal followed.[3]

## ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT DECISION GRANTING APPELLEE'S MOTION FOR TEMPORARY CUSTODY WAS VOID, BECAUSE IT DENIED DUE PROCESS TO APPELLANT DUE TO INSUFFICIENT SERVICE, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

II.   THE TRIAL COURT DECISION GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY WAS VOID, BECAUSE IT DENIED DUE PROCESS TO APPELLANT DUE TO INSUFFICIENT SERVICE, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

III.  THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO OBJECT TO THE TRIAL COURT'S IMPROPER SERVICE AND LACK OF JURISDICTION OVER

---

[3] We point out that Appellant filed his notice of appeal more than 30 days after the trial court's judgment granting the agency permanent custody of the child. However, appellant filed a motion with the trial court that asked the court to grant him "leave to file a notice of appeal out of time." He asserted that the courthouse was closed due to construction on the thirtieth day, May, 2022. The trial court granted Appellant's motion.

Despite the procedural irregularity, we recognize Appellant's appeal as timely given his assertion (and the trial court's acceptance) that the courthouse was closed on the thirtieth day and that he filed his notice of appeal on the next business day that the courthouse was open, May 31, 2022. *See* R.C. 1.14 ("When a public office in which an act, required by law, is to be performed is closed to the public for the entire day that constitutes the last day for doing the act or before its usual closing time on that day, the act may be performed on the next succeeding day that is not a Sunday or a legal holiday as defined in this section."); *e.g., State v. Kaiser*, 4th Dist. Lawrence No. 10CA1, 2010-Ohio-4616, ¶ 12 (App.R. 14(B) states that courts may not enlarge the time for filing a notice of appeal).

APPELLANT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED APPELLANT'S RIGHTS TO COUNSEL AND DUE PROCESS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

IV.     THE TRIAL COURT'S RULING, GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

V.      THE TRIAL COURT'S RULING, GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, BECAUSE APPELLEE DID NOT SHOW THAT IT HAD MADE "REASONABLE EFFORTS" TO REUNITE THE FAMILY PURSUANT TO R.C. 2151.419.

## ANALYSIS

### FIRST AND SECOND ASSIGNMENTS OF ERROR

{¶31} In his first and second assignments of error, Appellant argues that the trial court's dispositional order placing the child in the agency's temporary custody and its judgment granting the agency permanent custody of the child violate his due process right to adequate notice of the proceedings.  Appellant essentially argues that the failure to notify him in January 2021, or at least earlier than April 2021, that the child needed a placement deprived him of the ability to demonstrate, at the earliest opportunity, that the child could be placed with him.  Appellant asserts that

his earlier involvement in the case would have allowed him to make better use of the resources available to him and would have given him adequate time to comply with the case plan.  He claims that the additional time would have led the court to conclude that placing the child in his custody would be in the child's best interest.

{¶32} More particularly, Appellant alleges that "several critical errors" occurred while attempting to serve him with notice of the initial hearing and the permanent custody hearing.  He first asserts that the trial court erred by allowing the agency to serve the child's "unknown father" with notice of the initial complaint via publication.  He contends that the agency failed to establish that it exercised reasonable diligence to ascertain Appellant's address.  Appellant further argues that the trial court's notice setting the initial hearing date stated that the hearing would be held on March 29, 2021, but the court's entry suggests that the hearing was held on March 30, 2021.  Appellant thus claims that the service also failed to notify him of the accurate hearing date.  He additionally alleges that the court did not comply with Juv.R. 16 and Ross County Common Pleas Court, Juvenile Division, Local Rule 5.02(B).

{¶33} Appellant also argues that the trial court erred by allowing the agency to serve Appellant with notice of the permanent custody hearing via

publication. He claims that the agency failed to demonstrate that it used reasonable diligence to ascertain Appellant's address.

{¶34} We first observe that Appellant has improperly combined the arguments pertaining to his first and second assignments of error. While appellate courts may combine assignments of error, the Appellate Rules require an appellant's brief to separately argue each assignment of error. App.R. 16(A)(7) (stating that "[t]he appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies"); *State v. Rife*, 4th Dist. Ross No. 11CA3276, 2012-Ohio-3264, ¶ 15. We thus would be within our discretion to disregard Appellant's first and second assignments of error. *See* App.R. 12(A)(2) (stating that court may disregard an assignment of error if appellant fails to separately argue it). We prefer, however, to decide cases on their merits rather than procedural technicalities. *Barksdale v. Van's Auto Sales, Inc.*, 38 Ohio St.3d 127, 128, 527 N.E.2d 284, 285 (1988) (noting that a "basic tenet of Ohio jurisprudence [is] that cases should be determined on their merits and not on mere procedural technicalities"). We therefore will

review Appellant's first and second assignments of error to the extent described below.

{¶35} The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall * * * be deprived of life, liberty, or property, without due process of law." "[P]arents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by this Court.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Indeed, the right to raise one's "child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (stating that "natural parents have a fundamental right to the care and custody of their children"). Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *B.C.* at ¶ 19, quoting *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); *Murray*, 52 Ohio St.3d at 157.

{¶36} The Ohio Supreme Court has described the permanent termination of parental rights as " 'the family law equivalent of the death penalty in a criminal case.' " *Hayes*, 79 Ohio St.3d at 48, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Consequently, courts must afford parents facing the permanent termination of their parental rights " 'every procedural and substantive protection the law allows.' " *Id.*, quoting *Smith* at 16, 601 N.E.2d 45; *accord B.C.* at ¶ 19. Thus, because parents possess a fundamental liberty interest in the care and custody of their children, the state may not deprive parents of their parental rights without due process of law. *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 16; *e.g.*, *In re A.G.*, 4th Dist. Athens No. 14CA28, 2014-Ohio-5014, ¶ 12; *In re M.H.*, 4th Dist. Vinton No. 11CA683, 2011-Ohio-5140, ¶¶ 49-50. Moreover, a parent's right to due process "does not evaporate simply because" that parent has "not been [a] model parent[ ] or [has] lost temporary custody of their child to the State." *Santosky*, 455 U.S. at 753.

{¶37} Although "due process" lacks precise definition, courts have long held that due process requires both notice and an opportunity to be heard. *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 12, citing *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 708, 4 S.Ct. 663, 28 L.Ed. 569 (1884); *Caldwell v. Carthage*, 49 Ohio St. 334, 348,

31 N.E. 602 (1892). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *accord In re Thompkins* at ¶ 13.

{¶38} Moreover, given the importance of the parent-child bond, "a Juvenile Court cannot make a valid order changing temporary commitment of a dependent child to a permanent one without a service of notice upon the parent of the child, strictly in accordance with the law." *In re Frinzl*, 152 Ohio St. 164, 173, 87 N.E.2d 583 (1949); *accord In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, ¶ 43, quoting *In re Cowling*, 72 Ohio App.3d 499, 500-501, 595 N.E.2d 470 (9th Dist.1991). " '[A] judgment rendered without proper service or entry of appearance is a nullity and void.' " *State ex rel. Ballard v. O'Donnell*, 50 Ohio St.3d 182, 183-184, 553 N.E.2d 650 (1990), quoting *Lincoln Tavern, Inc. v. Snader*, 165 Ohio St. 61, 64, 133 N.E.2d 606 (1956). Thus, "a valid court judgment requires both proper service under the applicable Ohio rules and adequate notice under the Due Process Clause." *In re A.G.*, 4th Dist. Athens No. 14CA28, 2014-Ohio-

5014, 2014 WL 5812193, ¶ 14, citing *Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 293, 421 N.E.2d 522 (1981).

{¶39} When, however, "parents of minor children have the notice and opportunity to assert their rights in a permanent custody proceeding," no due process violation occurs. *Ross v. Saros*, 99 Ohio St.3d 412, 2003-Ohio-4128, 792 N.E.2d 1126, ¶ 17. Accordingly, "a notice issue may be waived on appeal when a parent's attorney is present for various permanent custody hearings and does not raise the improper notice issue." *In re C.B.*, 2020-Ohio-5151, 161 N.E.3d 770, ¶ 19 (4th Dist.).

{¶40} In the case sub judice, at no point during the trial court proceedings did Appellant assert that he had not been adequately notified of any of the proceedings. Instead, he entered an appearance, requested court-appointed counsel, did not object to any deficiency in service, stipulated to the dependency adjudication, and attended the permanent custody hearing. Not once did Appellant or his counsel assert that he had not received adequate service of the agency's initial complaint or its permanent custody motion. Under these circumstances, we believe that Appellant waived the argument that he did not receive adequate service of process. *Ross* at ¶ 17; *C.B.* at ¶ 19; *accord In re A.C.*, 9th Dist. Summit No. 30086, 2022-Ohio-1081, ¶¶ 8-9 (rejecting parent's assertion that permanent custody decision

void for lack of personal jurisdiction due to alleged improper service of complaint and permanent custody motion when parent appeared at hearings and failed to object to alleged lack of proper service); *In re I.G.*, 3rd Dist. Marion No. 9-13-43, 2014-Ohio-1136, ¶ 18, quoting *In re Keith Lee P.,* 6th Dist. Lucas No. L-03-1266, 2004-Ohio-1976, ¶ 9 (stating that "'[t]he issue of notice is waived on appeal when the parent's attorney is present for various permanent custody hearings and never argues improper notice'"); *In re D.H.*, 177 Ohio App.3d 246, 2008-Ohio-3686, 894 N.E.2d 364, ¶ 38 (8th Dist.) ("the issue of notice is waived on appeal when the parent's attorney is present for various permanent-custody hearings and never argues improper notice"); *see Lundeen v. Turner*, 164 Ohio St.3d 159, 2021-Ohio-1533, 172 N.E.3d 150, ¶ 22, fn. 2 (in a civil proceeding, a trial court's judgment is not void due to allegedly improper service when party submits to court's jurisdiction); *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 36 (stating that a person "submits to the court's jurisdiction if he does not object to the court's exercise of jurisdiction over him"); *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, 870 N.E.2d 714, ¶ 13 (stating that a party voluntarily submits to a court's jurisdiction "by failing to raise the defense of insufficiency of service of process in a responsive pleading or by filing certain motions before any

pleading"); *In re Hunt*, 46 Ohio St.2d 378, 381, 348 N.E.2d 727 (1976)

(noting that under Juv.R. 22, parent has "the opportunity to file an answer, to

file motions to dismiss based upon the insufficiency of the complaint and the

failure to show jurisdiction"); Juv.R. 22(D)(1) (stating that "[d]efenses or

objections based on defects in the institution of the proceeding" "must be

heard before the adjudicatory hearing"). *But see In re R.P.*, 9th Dist.

Summit No. 26271, 2012-Ohio-4799 (determining that trial court never

obtained personal jurisdiction over unknown father and voiding legal

custody award when evidence showed that children services agency was not

truthful when attesting that father unknown and that no one had contacted

the agency claiming to be the child's father; instead, putative father had

called the agency and left his phone number and agency did not follow up

with putative father).

{¶41} Accordingly, based upon the foregoing reasons, we overrule

Appellant's first and second assignments of error.

## THIRD ASSIGNMENT OF ERROR

{¶42} In his third assignment of error, Appellant argues that trial

counsel failed to provide effective assistance of counsel by failing to object

to the lack of improper service and lack of personal jurisdiction. He

contends that had trial counsel properly objected, then "the trial court would

not have granted either temporary or permanent custody to the agency, and [Appellant]'s parental rights would not have been terminated."

{¶43} The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998); *e.g., In re J.P.B.*, 4th Dist. Washington No. 12CA34, 2013-Ohio-787, ¶ 23; *In re K.M.D.*, 4th Dist. Ross No. 11CA3289, 2012-Ohio-755, ¶ 60; *In re A.C.H.*, 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶ 50. " 'Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.' " *Wingo*, 143 Ohio App.3d at 666, quoting *Heston*.

{¶44} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 83; *State v. Powell*, 132 Ohio St.3d

233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶45} "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted); *accord Hinton v. Alabama*, 571 U.S. 263, 134 S.Ct. 1081, 1088, 188 L.Ed.2d 1 (2014), citing *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010); *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81. Furthermore, " '[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' " *Hinton*, 134 S.Ct. at 1088, quoting *Strickland*, 466 U.S. at 688. Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a

defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., Obermiller* at ¶ 84; *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶46} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that " 'but for counsel's errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the outcome.' " *Hinton*, 134 S.Ct. at 1089, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. Furthermore, courts ordinarily may not simply presume the existence of prejudice but must require the defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592, 2002 WL 507529 (Apr. 2, 2002).  As we have repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim.  *E.g., State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State*

*v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

{¶47} In the case at bar, even presuming that Appellant established that trial counsel performed deficiently by failing to object to the alleged lack of proper service, we do not believe that Appellant has demonstrated that any supposed deficiency caused him prejudice. Appellant speculates that if trial counsel had properly objected, then the trial court would not have granted the agency temporary custody of the child at the outset of the case. However, had trial counsel objected to the alleged deficiency of service at the first opportunity, the trial court could have continued the child in the agency's temporary custody until proper service could be made upon Appellant. Moreover, when the agency first obtained custody of the child, Appellant had not been confirmed to be the child's father. Thus, Appellant's assertion that the trial court would have placed the child in his custody, when he had yet to be confirmed to be the child's father, also is purely speculative.

{¶48} Accordingly, based upon the foregoing reasons, we overrule Appellant's third assignment of error.

## FOURTH ASSIGNMENT OF ERROR

{¶49} In his fourth assignment of error, Appellant contends that the trial court's decision to grant the agency permanent custody of the child is against the manifest weight of the evidence. He asserts that he "substantially complied with several conditions of the case plan." Appellant states that he completed parenting classes, obtained stable housing, is gainfully employed, and displayed a commitment to the child by visiting with her. He further points out that even though he recently had been terminated from his alcohol and drug treatment counseling, he had been engaged in counseling for nearly one year before his termination.

## STANDARD OF REVIEW

{¶50} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *See In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 53 (4th Dist.). When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in

the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶51} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *R.M.* at ¶ 55.

{¶52} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the factfinder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins* at 387, 678 N.E.2d 541, quoting *Martin* at 175, 485 N.E.2d 717.  A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*, quoting *Martin* at 175, 485 N.E.2d 717.

PERMANENT CUSTODY FRAMEWORK

{¶53} R.C. 2151.414(B)(1) specifies that a trial court may grant a children services agency permanent custody of a child if the court finds, by clear and convincing evidence, that (1) the child's best interest would be served by the award of permanent custody, and (2) any of the following conditions applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an

equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive 22-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶54} In the case at bar, the trial court found that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. On appeal, Appellant has not challenged this finding.[4] Therefore, we do not address the issue.

---

[4]We observe that Appellant states in his brief that the agency filed its permanent custody motion "more than 12 months after [the child] was placed with the agency on January 16, 2021" and, thus, that "the analysis shifts to the best interest determination." We note, however, that for purposes of R.C. 2151.414(B)(1)(d) "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." R.C. 2151.414(B)(1)(e). According to this statute, when the agency filed its February 28, 2022 permanent custody motion, the child had not yet been in the agency's temporary custody for 12 or more months of a consecutive 22-month period.

{¶55} R.C. 2151.414(D)(1) requires a trial court to consider all relevant, as well as specific, factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The specific factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶56} Determining whether granting permanent custody to a children services agency will promote a child's best interest involves a delicate balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56; *accord In re C.G.*, 9th Dist. Summit Nos. 24097 and 24099, 2008-Ohio-3773, ¶ 28; *In re N.W.*, 10th Dist. Franklin Nos. 07AP-590 and 07AP-591, 2008-Ohio-297, ¶ 19. However,

none of the best interest factors requires a court to give it "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38, and 9-15-39, 2017-Ohio-142, ¶ 24; *In re A.C.*, 9th Dist. Summit No. 27328, 2014-Ohio-4918, ¶ 46. In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 66, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).

{¶57} In the case at bar, we do not believe that the trial court's best interest determination is against the manifest weight of the evidence. The agency presented substantial clear and convincing evidence that placing the child in its permanent custody would serve the child's best interest.

Child's Interactions and Interrelationships

{¶58} The evidence shows that the child has been living with the same foster family since shortly after her birth. She has bonded with the foster family, and the foster family plans to adopt the child if the court grants the agency permanent custody.

{¶59} Appellant had weekly visits with the child and did not always maintain a consistent visitation schedule. Shortly before the agency filed its permanent custody motion, Appellant told the caseworker that he had missed several visits in December 2020 and January 2021 because he needed to take a break. A parent who believes that he or she needs a break from visiting his or her child in the temporary custody of a children services agency does not display the level of commitment indicative of a healthy, nurturing, and committed parent-child relationship.

### Child's Wishes

{¶60} The record shows that the child is far too young to be able to express her wishes directly to the court. The guardian ad litem recommended that the court grant the agency permanent custody of the child. *In re I.A.-W.*, 8th Dist. Cuyahoga No. 111217, 2022-Ohio-1766, ¶ 37; *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014–Ohio–2961, ¶ 32 (both recognizing that R.C. 2151.414 permits juvenile courts to consider a child's wishes as child directly expresses or through the guardian *ad litem*).

### Custodial History

{¶61} The child has never been in Appellant's custody. She has been in the agency's temporary custody since shortly after her birth in January

2021. While in the agency's temporary custody, the child has lived in the same foster home.

Legally Secure Permanent Placement

{¶62} "Although the Ohio Revised Code does not define the term 'legally secure permanent placement,' this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met." *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56, citing *In re Dyal*, 4th Dist. Hocking No. 01CA12, *9 (Aug. 9, 2001) (implying that "legally secure permanent placement" means a "stable, safe, and nurturing environment"); *see also In re K.M.*, 10th Dist. Franklin Nos. 15AP-64 and 15AP-66, 2015-Ohio-4682, ¶ 28 (observing that legally secure permanent placement requires more than stable home and income but also requires environment that will provide for child's needs); *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 95 (stating that mother unable to provide legally secure permanent placement when she lacked physical and emotional stability and that father unable to do so when he lacked grasp of parenting concepts); *In re J.W.*, 171 Ohio App.3d 248, 2007-Ohio-2007, 870 N.E.2d 245, ¶ 34 (10th Dist.) (Sadler, J., dissenting) (stating that a legally secure permanent placement means "a placement that is stable and consistent"); Black's Law Dictionary 1354 (6th Ed. 1990)

(defining "secure" to mean, in part, "not exposed to danger; safe; so strong, stable or firm as to insure safety"); *Id.* at 1139 (defining "permanent" to mean, in part, "[c]ontinuing or enduring in the same state, status, place, or the like without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient"). Thus, "[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." *M.B.* at ¶ 56.

{¶63} Here, the evidence supports the trial court's finding that the child needs a legally secure permanent placement and that she cannot achieve that type of placement without granting the agency permanent custody. Although Appellant claims to have made significant strides towards being able to provide the child with a stable, secure, and permanent home, the trial court found otherwise. The court noted that Appellant failed to remain compliant with his drug treatment program and had been terminated from the program only a few weeks before the permanent custody hearing because he had tested positive for illegal drugs three times within a three-month period. Furthermore, throughout the history of the case, Appellant did not maintain a stable residence. He bounced from house

to house and was homeless for a period of time. At the time of the permanent custody hearing he was living with a friend. Thus, we do not believe that the trial court's finding that the child needs a legally secure permanent placement and that she cannot achieve that type of placement without granting the agency permanent custody is against the manifest weight of the evidence.

{¶64} Moreover, even if Appellant complied with parts of the case plan, as we have observed in the past, a parent's case plan compliance may be a relevant, but not necessarily conclusive, factor when a court considers a permanent custody motion. *In re B.P.*, 4th Dist. Athens No. 20CA13, 2021-Ohio-3148, ¶ 57; *In re T.J.*, 4th Dist. Highland No. 2016-Ohio-163, ¶ 36, citing *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 34 ("although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re S.C.*, 8th Dist. Cuyahoga No. 102349, 2015-Ohio-2280, ¶ 40 ("Compliance with a case plan is not, in and of itself, dispositive of the issue of reunification"); *accord In re K.M.*, 4th Dist. Ross No. 19CA3677, 2019-Ohio-4252, ¶ 70, citing *In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 46 ("[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification and does not preclude a grant of permanent custody

to a children's services agency"); *In re N.L.*, 9th Dist. Summit No. 27784, 2015-Ohio-4165, ¶ 35 ("substantial compliance with a case plan, in and of itself, does not establish that a grant of permanent custody to an agency is erroneous").  "Indeed, because the trial court's primary focus in a permanent custody proceeding is the child's best interest, 'it is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately terminate his/her parental rights.' "  *W.C.J.* at ¶ 46, quoting *In re Gomer*, 3d Dist. Wyandot Nos. 16-03-19, 16-03-20, and 16-03-21, 2004-Ohio-1723, ¶ 36; *accord In re K.J.*, 4th Dist. Athens No. 08CA14, 2008-Ohio-5227, ¶ 24 ("when considering a R.C. 2151.414(D)(1)(d) permanent custody motion, the focus is upon the child's best interests, not upon the parent's compliance with the case plan"). Thus, a parent's case plan compliance will not preclude a trial court from awarding permanent custody to a children services agency when doing so is in the child's best interest. *Id.*

{¶65} In the case sub judice, as we noted above, we believe that the record contains ample clear and convincing evidence that placing the child in the agency's permanent custody is in her best interests.  Furthermore, contrary to Appellant's argument that he "substantially complied with several conditions of the case plan," the trial court specifically found that

Appellant completed the parenting-class requirement but he "did not complete the other significant portions of the case plan."

{¶66} In sum, all of the foregoing evidence supports the trial court's decision to grant the agency permanent custody of the child, and we are unable to conclude that the trial court's judgment is against the manifest weight of the evidence.

{¶67} Accordingly, based upon the foregoing reasons, we overrule Appellant's fourth assignment of error.

FIFTH ASSIGNMENT OF ERROR

{¶68} In his fifth assignment of error, Appellant asserts that the trial court erred by granting the agency permanent custody of the child due to the agency's alleged failure to use reasonable efforts to place the child with Appellant. He argues that the agency did not use reasonable efforts to contact him at the start of the case. He further alleges that the agency did not use reasonable efforts to be able to place the child with Appellant.

{¶69} When a trial court "removes a child from the child's home or continues the removal of a child from the child's home," R.C. 2151.419(A)(1) requires a trial court to determine whether a children services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from

the child's home, or to make it possible for the child to return safely home."

"In determining whether reasonable efforts were made, the child's health

and safety shall be paramount." R.C. 2151.419(A)(1). The agency bears the

burden to prove that it has made reasonable efforts. R.C. 2151.419(A)(1).

{¶70} However, R.C. 2151.419(A)(1) applies only at "adjudicatory,

emergency, detention, and temporary-disposition hearings, and dispositional

hearings for abused, neglected, or dependent children * * *." *C.F., supra*, at

¶ 41; *accord In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19,

2016-Ohio-916, ¶ 72. Thus, " '[b]y its plain terms, the statute does not

apply to motions for permanent custody brought pursuant to R.C. 2151.413,

or to hearings held on such motions pursuant to R.C. 2151.414.' " *C.F.* at ¶

41, quoting *In re A.C.*, 12th Dist. Clermont No. CA2004-05-041, 2004-

Ohio-5531, ¶ 30. Nonetheless, "[t]his does not mean that the agency is

relieved of the duty to make reasonable efforts" before seeking permanent

custody. *Id.* at ¶ 42. Instead, at prior "stages of the child-custody

proceeding, the agency may be required under other statutes to prove that it

has made reasonable efforts toward family reunification." *Id.* Additionally,

"[if] the agency has not established that reasonable efforts have been made

prior to the hearing on a motion for permanent custody, then it must

demonstrate such efforts at that time." *Id.* at ¶ 43.

{¶71} In the case sub judice, appellant's appeal does not originate from one of the types of hearings specifically listed in R.C. 2151.419(A): "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children." The agency, therefore, did not have the burden to prove at the permanent custody hearing that it used reasonable efforts to reunify the family unless it had not previously done so. Here, our review of the record reflects that the trial court made multiple reasonable efforts findings before the agency filed its permanent custody motion. Thus, the court did not need to again find that the agency used reasonable efforts before it could grant the agency permanent custody of the child. *E.g., In re M.H.–L.T.*, 4th Dist. Washington No. 17CA12, 2017-Ohio-7825, ¶ 64; *In re S.S.*, 4th Dist. Jackson Nos. 16CA7 and 16CA8, 2017-Ohio-2938, ¶ 168.

{¶72} Accordingly, based upon the foregoing reasons, we overrule Appellant's fifth assignment of error.

CONCLUSION

{¶73} Having overruled Appellant's five assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and Appellant shall pay costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Juvenile Court, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.


For the Court,


_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**