[Cite as *Troon Mgt., Ltd. v. Adams Family Trust*, 2023-Ohio-3489.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| Troon Management, Ltd., | : | Case No. 22CA19 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| The Adams Family Trust, et al., | : | |
| Defendants-Appellants. | : | **RELEASED 9/28/2023** |

_____

<u>APPEARANCES</u>:

Barton R. Keyes, Cooper Elliott, Columbus, Ohio, for appellants The Adams Family Trust and Bret Adams.

Brian S. Stewart, The Law Office of Brian Stewart, LLC, Circleville, Ohio, for appellee Troon Management, Ltd.

_____

Hess, J.

{¶1}    The Adams Family Trust ("AFT") and Bret Adams (collectively, "Appellants") appeal from a judgment of the Pickaway County Court of Common Pleas in favor of Troon Management, Ltd. ("Troon") in its action for declaratory judgment/quiet title and slander of title.  The Appellants present four assignments of error asserting that the trial court erred by (1) granting Troon summary judgment on the declaratory judgment/quiet title claim and denying AFT summary judgment on that claim and the slander of title claim, (2) denying the Appellants' motion for reconsideration, (3) denying Mr. Adams summary judgment on the slander of title claim, and (4) finding in favor of Troon on the slander of

title claim and entering judgment in favor of Troon and against them.  For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Background

{¶2}   Diane Adams is trustee of AFT, which once owned two parcels of real property in Circleville, Ohio, which we will refer to as the "Route 56 Farm." Troon lent money to Bret Adams, Mrs. Adams' husband, and AFT provided collateral in the form of a deed to the Route 56 Farm.  Mr. Adams and AFT made no payments towards the debt. AFT later denied that Troon's title to the farm was valid, and Troon filed suit against AFT in Pickaway County Case No. 2018 CI 0027. The trial court ruled in Troon's favor and held it was the title owner of the farm.

{¶3}   At that time, there were two mortgages encumbering the Route 56 Farm, one of which was held by Kristina B. Gerig (the "Gerig Mortgage").  The Gerig Mortgage secured a promissory note in favor of Gerig (the "Gerig Note") signed by (1) Mrs. Adams as trustee of AFT; (2) Mr. Adams individually; (3) Mr. Adams as agent of FM2, LLC; and (4) Mr. Adams as agent of CAM Development Company, Ltd. The note states that the signatories "jointly and severally, promise to pay to" Gerig "the principal sum of Four Hundred and Seventy-One Thousand Eight Hundred and Forty-Three Dollars and 78/00 ($478,843.78) within ten days of" her demand "but not earlier than January 1, 2016" and contains interest provisions. Gerig and AFT later agreed there was a scrivener's error regarding the principal sum, and the amount expressed in words was correct, not the amount expressed in numbers.

{¶4} On October 4, 2019, Troon and AFT executed an agreement, which we will refer to as the "Troon-AFT Settlement Agreement," in which AFT agreed to dismiss its appeal from the decision in Case No. 2018 CI 0027, acknowledged Troon's deed was valid and enforceable, and affirmed that it had "no legal interest" in the Route 56 Farm. Section 9 of the agreement states that "Troon assumes all legal risk of * * * [the two mortgages on the property] and any enforcement action by such lienholder shall not affect the validity of this agreement; provided, however, that Troon is not assuming AFT's obligations on the underlying notes secured by the mortgages referenced in this section, and is under no obligation to make payments towards the same."

{¶5} On October 11, 2019, Gerig and AFT entered into an agreement which we will refer to as the "Gerig-AFT Agreement." The agreement was signed by Gerig individually and as agent of Edgart, Ltd., Christian S. Gerig individually, Mrs. Adams individually and as trustee of AFT, and Mr. Adams individually and as agent of FM2, LLC and CAM Development Company, Ltd. The agreement provides that Gerig "hereby sells, assigns, transfers and conveys" to AFT all of her "right, title and interest" in specified documents, including the Gerig Note and Gerig Mortgage, and "all rights, claims and interests or the right to payment" she has "arising out of or related to" those documents, subject to the terms of the Gerig-AFT Agreement. Section 9 of the agreement states that with certain exceptions, Gerig "makes no representation or warranty" with respect to the documents, "including, without limitation, enforceability, liability, lien perfection or priority, collectability, the value or condition of any collateral or the absence of any defects." Section 9 then states that AFT "acknowledges and agrees that it will look solely to Borrower for the payment of the Obligations represented by the Loan Documents." The

agreement defines "Borrowers" as FM2, LLC, CAM Development Company, Ltd., Mr. Adams, and Mrs. Adams as trustee of AFT. The parties and signatories to the Gerig-AFT Agreement agreed there was "a total of $418,943.31 owed on the" Gerig Note. Mr. Adams agreed to assign his 18.75% interest in Grande Vista Village, LLC ("GVV") to Gerig in exchange for the assignment of the Gerig Note to AFT and "other consideration" detailed in the agreement. Mr. Adams and Gerig executed a separate document in which Mr. Adams assigned his GVV interest to her effective October 11, 2019.

{¶6} On October 17, 2019, Gerig executed an Assignment of Mortgage. The document states that for valuable consideration, she "does hereby sell, assign, transfer and set over unto [AFT] all of [her] right, title and interest in and to [the Gerig Mortgage]." On October 23, 2019, Mr. Adams recorded the Assignment of Mortgage. A week later, he sent a letter to Vincent Rakestraw, a member of Troon, stating that AFT's trustee had authorized him "to make a formal demand for payment regarding the" Gerig Note, the current amount due was $698,488.27, payment was due within 10 days, and if Mr. Adams did not hear from him, a foreclosure action would be filed. The letter also stated, "If you do not have the ability to address this payment the Trust would accept a General Warranty Deed, free of any encumbrances, in exchange for the debt."

B. The Complaint

{¶7} In November 2019, Troon filed a two-count complaint against AFT, Mr. Adams, and Gerig. In Count One, Troon sought a declaratory judgment that the Gerig Mortgage was void and/or satisfied as against the Route 56 Farm and thereby cancelled of record. Alternatively, Troon asked the court to quiet title to the farm and determine that the Gerig Mortgage was void and/or satisfied as against the farm and thereby cancelled

of record.  In Count Two, Troon made a claim for slander of title based on the recording of the Assignment of Mortgage.

### C.  Summary Judgment Motions

{¶8}    Gerig filed a motion for summary judgment supported by the affidavit of her husband.  The trial court granted the motion and dismissed her as a defendant.  In doing so, the court did not consider the materials Troon submitted in support of its memorandum contra on the ground that Troon failed to comply with Civ.R. 56. With respect to the slander of title claim against Gerig, the court found that the Assignment of Mortgage did "nothing but assign whatever interest Defendant Gerig has in [the Gerig Mortgage] to [AFT].  There are no warranties or representations concerning the enforceability of the mortgage.  The statement of assignment is true.  There is no evidentiary material before this court to counter that conclusion."  The court also found that the affidavit of Gerig's husband stated that the Assignment of Mortgage was true, and there was no evidentiary material before the court to counter the assertions in his affidavit.  Thus, the court found that there were "no genuine issues of material fact that the statements contained in the Assignment of Mortgage are true."

{¶9}    Troon moved for summary judgment against Mr. Adams and AFT.  Among other things, Troon argued that the case turned "on two basic applications of the law and common sense.  First: if the maker and the holder of a promissory note are the same person, there is no legally enforceable debt owed on that promissory note since a party cannot be indebted to themselves.  Second: if there is no underlying debt, there can be no enforceable mortgage to secure that non-existent debt." Troon asserted the Gerig Mortgage was void because the Gerig Note had been satisfied. Troon claimed one

indication the note was satisfied was that "as held by AFT, it is worthless." Troon argued: "AFT claims that it is the holder of the Gerig Note by way of an assignment, but it is indisputably also one of the *makers* of the Gerig Note also. * * * AFT's claim that a party can be legally indebted to *itself* is an absurdity, and Plaintiff has been unable to find any reported case law in which this same situation has existed." (Emphasis sic.) Troon later stated: "AFT is, by its demand letter to Troon, claiming that it can be both the holder and the maker of the Gerig Note. This is illogical. A party simply cannot have an enforceable payment obligation to *itself*. A party cannot sue *itself* in Court to recover for its own non-payment of a debt owed to *itself*." (Emphasis sic.) Troon also asserted that AFT's claim that it could pursue Troon for payment was contradicted by its agreement to Section 9 of the Troon-AFT Settlement Agreement and violated Section 9 of the Gerig-AFT Agreement. Troon asserted AFT and Mr. Adams were also liable for slander of title. Mr. Adams and AFT opposed Troon's motion and filed summary judgment motions.

{¶10} The trial court issued a decision and entry regarding the competing summary judgment motions of Troon and Mr. Adams. The court granted in part Troon's motion for summary judgment on its declaratory judgment claim against Mr. Adams, finding that he was a necessary party to that claim. The court stated that its decision on the status of the Gerig Mortgage and Mr. Adams' interest therein, if any, would be addressed in a separate decision. The court overruled Troon's motion for summary judgment on the slander of title claim against Mr. Adams and overruled Mr. Adams' summary judgment motion.

{¶11} The trial court also issued a decision and entry regarding the competing summary judgment motions of Troon and AFT. The court held that: (1) AFT's interests

as "maker and holder/payee on the Gerig [N]ote merged upon the execution of the assignment of" the Gerig Note and Gerig Mortgage to AFT, so the "debt on the note was extinguished and the mortgage is not enforceable against Plaintiff," (2) Section 9 of the Troon-AFT Settlement Agreement barred AFT "from collecting any amount due on the Gerig [N]ote from Plaintiff or enforcing the mortgage against Plaintiff," (3) Section 9 of the Gerig-AFT Agreement barred AFT "from collecting any amount due on the Gerig [N]ote from Plaintiff or enforcing the mortgage against Plaintiff" "under the doctrine of third party beneficiary contract," (4) the debt evidenced in the Gerig Note was "discharged against Plaintiff" by Gerig and AFT in Section 9 of the Gerig-AFT Agreement pursuant to R.C. 1303.69, and (5) Mr. Adams' position as maker on the Gerig Note and signor on the Gerig-AFT Agreement gave him no rights to enforce the Gerig Note and Gerig Mortgage. Thus, the trial court granted Troon summary judgment on the declaratory judgment/quiet title claim, declared the Gerig Mortgage void against the Route 56 Farm, and quieted title to the farm against Mr. Adams and AFT. The trial court overruled Troon's motion for summary judgment on the slander of title claim and overruled AFT's motion for summary judgment. The matter proceeded to a bench trial on the remaining slander of title claim against the Appellants.

## D. The Verdict

{¶12} Following the trial, the court issued a decision containing its findings of fact and conclusions of law. Among other things, the court found that Mr. Adams "conveyed his entire ownership interest in [GVV] (valued between $600,000.00 to $800,000.00) which owned a lucrative apartment complex in Athens, Ohio, to Kristina, in return for his own liabilities to Kristina being extinguished." The court found: "As a result of the Gerig-

AFT Agreement, all obligations of Bret Adams and AFT to Kristina were extinguished."

The court also found that "[i]n the Gerig-AFT Agreement, the parties intentionally omitted

any reference to the value of the [GVV] membership interest in order to obscure that a

trade of equally valuable assets had occurred."  Additionally, the court found that Section

9 of the Troon-AFT Settlement Agreement "clearly states that Troon is not assuming

AFT's obligation to pay on the Gerig Note and has to make no payments on the Note,"

and Section 9 of the Gerig-AFT Agreement included language "which explicitly affirmed

that AFT would have no right to pursue collection of the Gerig Note against any parties

other than the original makers of that note."

{¶13}  In its conclusions of law, the court stated, among other things, that:

- "The debt owed by Bret Adams and AFT on the underlying Gerig Note was extinguished when the [GVV] interest was conveyed, and as a matter of law, the corresponding Gerig Mortgage was extinguished also.  'A real estate mortgage is security for an obligation, and is incidental to that obligation.  **If the underlying debt is paid, the mortgage is extinguished**. An assignment of a mortgage transfers to the assignee all the rights, powers and equities owned by the mortgagee.  **An attempted assignment of a mortgage, apart from the [obligation] is deemed a nullity**.' *Olympic Title Insurance Company v. Fifth Third Bank*, 2002-Ohio-5826, ¶19 (2nd Dist.). Moreover, '**[a] mortgage is a lien for a debt and something more.**  It is a transfer of the title as security, **to be void on payment.**' *Division of Aid for Aged, Department of Public Welfare v. Huff* (1960), 110 Ohio App. 483, 486 (7th Dist.)."

- "AFT and Bret Adams knew, or should have known, that the Gerig Mortgage was void and could not be enforced against Troon, by operation of both Section 9 of the Settlement Agreement in the First Case, and §9 of the Gerig-AFT Agreement which explicitly stated that the holder of the Gerig Note could only pursue 'Borrowers' for payment."

- "The recording of the Assignment in the Recorder's Office for Pickaway County, Ohio constituted publication for purposes of a slander of title claim."

- "The Assignment constituted a false statement because it represented to the world that a valid, enforceable lien existed against [the Route 56 Farm] (in the form of the Gerig Mortgage) when it did not.  'As a general rule, courts

have found that wrongfully recording an unfounded claim to the property of another is actionable as slander of title. This is so provided that the other elements for slander of title, namely malice and special damages, are present.' *Green v. Lemarr* (2000[)], 139 Ohio App.3d 414, 432 (2nd Dist.)."

- "AFT and Bret Adams knew that the Assignment of the Gerig Mortgage constituted a false statement when recorded into the chain of title for the Route 56 Farm, or they recklessly disregarded the enforceability of the Assignment. Both Bret Adams and Diane Adams testified that they did not consult any legal counsel before proceeding with the recording of the Assignment, and that they were aware of the provisions of §9 of the Gerig-AFT Agreement which prevented them from attempting to pursue Troon for payment of the Gerig Note."

- "Bret Adams acted with actual malice in recording the Assignment, as evidenced by his lengthy history of verbal abuse towards Troon and its principals, Troon's counsel, his retaliatory lawsuits in other courts, and his explicit threat that 'I will get that deed back one way or another.' "

- "By ignoring the plain text of §9 of the Gerig-AFT Agreement and Settlement Agreement, and knowingly recording a document into the chain of title to indicate the continuing enforceability of a void mortgage, both AFT and Bret Adams acted with 'reckless disregard for the rights of' Troon."

(Emphasis and second alteration sic.) The court also concluded that Troon "suffered actual and special damages," that AFT and Mr. Adams were jointly and severally liable for slander of title in the amount of $71,557.98 plus post-trial attorney fees in an amount to be determined, and that Mr. Adams was individually liable for $2,000 in punitive damages.

### E. Subsequent Proceedings

**{¶14}** Troon filed an affidavit regarding its post-trial attorney fees. Then, AFT and Mr. Adams filed a motion asking the court to reconsider (1) the decision granting Troon summary judgment on the declaratory judgment/quiet title claim and denying AFT summary judgment on that claim, and (2) the decision containing the findings and fact and conclusions of law on the slander of title claim. On August 26, 2022, a judgment

entry was filed in which the court stated that in conformity with its findings of fact and conclusions of law, Troon was granted judgment against AFT and Mr. Adams, "jointly and severally" for $74,887.48, and that Troon was granted judgment "against the Defendants" for $2,000 for punitive damages. A minute later, an entry overruling the motion for reconsideration was filed. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶15} Appellants present four assignments of error:

1. The trial court erred by granting plaintiff/appellee Troon Management, Ltd. summary judgment on its claim for declaratory judgment to quiet title (Complaint Count One), and by denying defendant/appellant Adams Family Trust's motion for summary judgment on this claim and on appellee's slander of title claim (Complaint Count Two).

2. The trial court erred by impliedly denying defendant[s]/appellants' July 8, 2022 motion to reconsider by entering final judgment before ruling on it.

3. The trial court erred by denying defendant/appellant Bret Adams' motion for summary judgment on appellee's slander of title claim (Complaint Count Two).

4. The trial court erred and abused its discretion by finding in favor of plaintiff/appellee on its claim for slander of title and in entering judgment in favor of plaintiff/appellee and against defendants/appellants.

{¶16} The Appellants did not separately argue some assignments of error. They divided the argument section of their appellate brief into three subsections. The first subsection addresses the part of the first assignment of error directed to the declaratory judgment/quiet title claim, and the second subsection addresses the second assignment of error. However, the third subsection addresses the remainder of the first assignment of error, the third assignment of error, and the fourth assignment of error. This subsection is divided into two sub-subsections. The first one appears to combine arguments for the

remainder of the first assignment of error and the third assignment of error; the second one seems to address the fourth assignment of error.

{¶17} App.R. 16(A)(7) states: "The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) states: "The court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App. R. 16(A)." Therefore, we have discretion to disregard assignments of error which are not separately argued. *In re F.T.*, 4th Dist. Ross No. 22CA17, 2023-Ohio-191, ¶ 34. "We prefer, however, to decide cases on their merits rather than procedural technicalities." *Id.* We therefore will review all the assignments of error.

## III.  DECLARATORY JUDGMENT/QUIET TITLE CLAIM

{¶18} In the first assignment of error, the Appellants contend in part that the trial court erred by granting Troon summary judgment on the declaratory judgment/quiet title claim and denying AFT summary judgment on that claim.

### A.  Standard of Review

{¶19} We review a trial court's decision on a motion for summary judgment de novo. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12. We afford no deference to the trial court's decision but rather conduct an independent review to determine whether summary judgment is appropriate. *Id.* "A summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in

favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and

(3) the moving party is entitled to judgment as a matter of law." *Hawk v. Menasha*

*Packaging*, 4th Dist. Ross No. 07CA2966, 2008-Ohio-483, ¶ 6.

**{¶20}** "The party moving for summary judgment bears the initial burden to

demonstrate that no genuine issues of material fact exist and that they are entitled to

judgment in their favor as a matter of law." *DeepRock Disposal Solutions, LLC v. Forté*

*Prods., LLC*, 4th Dist. Washington No. 20CA15, 2021-Ohio-1436, ¶ 68. "To meet its

burden, the moving party must specifically refer to 'the pleadings, depositions, answers

to interrogatories, written admissions, affidavits, transcripts of evidence, and written

stipulations of fact, if any, timely filed in the action,' that affirmatively demonstrate that the

nonmoving party has no evidence to support the nonmoving party's claims." *Id.*, quoting

Civ.R. 56(C). "Once that burden is met, the nonmoving party then has a reciprocal burden

to set forth specific facts to show that there is a genuine issue for trial." *Id.*

### B. Merger

**{¶21}** Initially, the Appellants assert that the trial court erred when it held that the

assignment of the Gerig Note to AFT extinguished the note by merger and that the Gerig

Mortgage became unenforceable as a result. The court made the following findings in

connection with its merger determination:

### **MERGER**

> No party has provided case law or statute which even remotely
> addresses this issue. This court has found no case law on point. This court
> can look to the doctrine of merger by title when considering this issue by
> analogy. The doctrine of merger by title rests on the principle that a
> servitude or lesser estate in real property may not encumber another estate
> in real property when both estates are owned by the same person. *H[ie]ner*
> *v. Kelley* (1999 4ᵗʰ Dist.) * * *. Estates in real property merge when both
> estates are owned by the same person. By analogy, when the maker of the

note also becomes the person to whom the debt is owed these interests are merged and the debt is extinguished.

In the face of the dearth of guidance from precedent and the legislature, this court will resort to common sense and reason. A person cannot owe himself money. A person cannot obtain judgment against himself for the payment of money damages to himself. * * * The defendant has given this court no examples of such a situation. When the obligor also becomes the obligee or the promisor also becomes the promisee, the interests of these parties merge and the debt is extinguished.

A mortgage is security for debt obligation and is incidental to that obligation. Any attempted assignment of a mortgage independent from the obligation is invalid. *Olympic Title Insurance Company v. Fifth Third Bank*, 2002-Ohio-5826; *Division of Aid for Aged, Department of Public Welfare v. Huff* (1960) 110 OhioApp. 483 [sic]. Since the debt is extinguished by merger, the mortgage cannot be enforced.

### 1. Position of the Appellants

{¶22} The Appellants maintain that the assignment of the Gerig Note to AFT did not extinguish the note by merger because the assignment "did not result in a *complete* identity of holders and makers." (Emphasis sic.) They assert "[t]he trial court based its merger analysis on the notion that a person cannot owe themselves money" and "used the analogy of estates in real property merging when owned by the same person." The Appellants assert this "principle is true where the interest holders are *completely* identical, but not where there are differences." They claim that a case the trial court relied on, *Hiener v. Kelley*, 4th Dist. Washington No. 98CA7, 1999 WL 595363 (July 23, 1999), "even illustrates this principle." The Appellants assert that in this case, "the relevant interests did not vest in the same parties coextensively" because only one of the four makers of the Gerig Note became a holder of it. They maintain that "a person (or entity) can owe money to another" and that "[t]here is no legal principle inherent in Ohio's Uniform Commercial Code or the common law that would prohibit one of several makers

of a note from receiving a transfer of the note and enforcing it against the other makers." Therefore, they claim that even if the assignment of the Gerig Note "merged AFT's interests as maker and holder, it did not merge the interests of Bret Adams, FM2, or Cam Development, and so it did not extinguish the note." They assert "[t]he trial court erred in holding otherwise, and in turn erred in finding the mortgage unenforceable based on the purported extinguishment of the note by merger."

### 2. Analysis

{¶23} "Merger" is defined, inter alia, as "[t]he act or instance of combining or uniting," and "[t]he merger of rights and duties in the same person, resulting in the extinction of obligations; esp., the blending of the rights of a creditor and debtor, resulting in the extinguishment of the creditor's right to collect the debt." *Black's Law Dictionary* (11th Ed.2019). In *Hiener*, we considered whether an easement was extinguished through merger of title and explained that "[t]he doctrine of merger rests upon the principle that a servitude may not be impressed upon an estate of another estate when both estates are owned by the same person." *Hiener* at *10. Therefore "an easement is terminated when the dominant and servient estates become owned by the same person or persons." *Id.* We explained that "[t]o effectively terminate the easement, the fee title with right of possession of both tracts must vest in the same party or parties, c[o]extensively, and equal in validity, quality and all other circumstances of right." *Id.*

{¶24} In this case, a joint and several promissory note was assigned to one of its four makers. The parties have not directed us to any on point Ohio case law regarding whether merger occurs in these circumstances, and like the trial court, we have found none. However, we conclude merger occurs because joint and several liability means

"each liable party is individually responsible *for the entire obligation*, but a paying party may have a right of contribution or indemnity from nonpaying parties."  (Emphasis added.) *Black's Law Dictionary* (11th Ed.2019).  Therefore, even though there were four makers on the note, AFT was a debtor as to *the entire balance due*, and once the Gerig Note was assigned to AFT, it also became the creditor as *to the entire balance due*.  Thus, all rights and duties under the note united in the same entity.  As a result, the debt was extinguished, and no action can be maintained on the note.  *See generally Great W. Bank v. Kong,* 90 Cal.App.4th 28, 32 (2001) ("It has long been established in California that the assignment of a joint and several debt to one of the co-obligors extinguishes that debt. The assignment amounts to payment and consequently the evidence of that debt, i.e., the note * * *, becomes *functus officio* (of no further effect).  Therefore, no action can be maintained on the original debt." (Citations omitted.)).  The only action AFT could maintain against its co-makers is one for contribution for sums actually paid toward the debt.  *See* R.C. 1303.14(B) ("a party having joint and several liability who pays the instrument is entitled to receive from any party having the same joint and several liability contribution in accordance with applicable law").

{¶25}  "A real estate mortgage is security for an obligation, and is incidental to that obligation."  *Olympic Title Ins. Co. v. Fifth Third Bank*, 2d Dist. Montgomery Nos. 19324, 19319, 2002-Ohio-5826, ¶ 19.  So once the underlying debt was extinguished, the Gerig Mortgage was also extinguished.  Therefore, the trial court correctly found that the Gerig Mortgage was not enforceable against Troon based on merger, and on that basis, granted Troon summary judgment and denied AFT summary judgment on the declaratory judgment/quiet title claim.  It is therefore unnecessary for us to consider the arguments

the Appellants make regarding other grounds for the trial court's ruling on the declaratory judgment/quiet title claim. Accordingly, we overrule the first assignment of error to the extent it asserts the trial court erred by granting Troon summary judgment on the declaratory judgment/quiet title claim and in denying AFT's motion for summary judgment on that claim.

## IV. MOTION FOR RECONSIDERATION

{¶26} In the second assignment of error, the Appellants contend that the trial court erred when it implicitly denied their motion for reconsideration by entering final judgment before ruling on the motion. They maintain that the court "did not completely consider the merger issue when it granted Troon summary judgment." They assert that it is reversible error for a trial court to award summary judgment on a ground not specified in the summary judgment motion. They claim the trial court "acknowledged that neither party fully raised or briefed the issue of merger" when the court stated, "No party has provided case law or statute which even remotely addresses this issue." They assert that it was "legal error" for the trial court to grant summary judgment "based on this unbriefed issue" and that "[t]he trial court could not grant Troon summary judgment based on an issue for which it acknowledged Troon did not provide any supporting law." And the Appellants claim the trial court "compounded this legal error by denying" their motion for reconsideration.

{¶27} As the Appellants point out, the entry overruling their motion for reconsideration was filed after the trial court's final judgment, i.e., the August 26, 2022 entry granting Troon judgment against AFT and Mr. Adams. At that time, the trial court lacked jurisdiction to reconsider its own valid final judgment. *See Estes v. Estes*,

4th Dist. Meigs No. 10CA1, 2010-Ohio-4037, ¶ 9. However, because the motion for reconsideration was pending when the trial court issued its final judgment, it is deemed to have been implicitly overruled at that time. *Savage v. Cody-Zeigler, Inc.*, 4th Dist. Athens No. 06CA5, 2006-Ohio-2760, ¶ 25 ("Ordinarily, any pending motions the trial court does not expressly rule on when it renders final judgment are deemed implicitly overruled").

**{¶28}** "Generally, a trial court has plenary power to entertain a motion for reconsideration prior to entering a final judgment." *Culp v. Olukoga*, 2013-Ohio-5211, 3 N.E.3d 724, ¶ 59, citing *Vanest v. Pillsbury Co.*, 124 Ohio App.3d 525, 535, 706 N.E.2d 825 (4th Dist.1997), *abrogated on other grounds by State ex rel. O'Malley v. Russo*, 156 Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256. "Thus, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding a motion for reconsideration." *Id.* An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

**{¶29}** The trial court did not abuse its discretion when it overruled the motion for reconsideration. The Appellants are correct that " '[i]t is reversible error to award summary judgment on grounds not specified in the motion for summary judgment.' " *State ex rel. Sawicki v. Court of Common Pleas of Lucas Cty.*, 121 Ohio St.3d 507, 2009-Ohio-1523, 905 N.E.2d 1192, ¶ 27, quoting *Patterson v. Ahmed*, 176 Ohio App.3d 596, 2008-Ohio-362, 893 N.E.2d 198, ¶ 14 (6th Dist.). "A party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow

the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1998), syllabus. By relying on an unargued ground as a basis for awarding summary judgment, a court denies the nonmoving party that opportunity. *See Sawicki* at ¶ 27.

{¶30} However, Troon did raise the issue of merger in its summary judgment motion, though it did not use that term. Troon's motion asserted that "if the maker and the holder of a promissory note are the same person, there is no legally enforceable debt owed on that promissory note since a party cannot be indebted to themselves," that "[a] party simply cannot have an enforceable payment obligation to *itself*," that "[a] party cannot sue *itself* in Court to recover for its own non-payment of a debt owed to *itself*," and that "if there is no underlying debt, there can be no enforceable mortgage to secure that non-existent debt." (Emphasis sic.) Because Troon raised the merger issue in its summary judgment motion, the Appellants had a meaningful opportunity to respond in their memorandum contras. Troon's inability to direct the trial court to a specific legal authority to support its position is understandable given the unusual circumstances of this case and inability of the trial court and this court to find any on point Ohio case law. However, the principle that a debtor cannot owe itself money or sue itself "is both a legal truism and a matter of common sense." *In re Morreale*, 61 Bankr.Ct.Dec. 60, 2015 WL 3897796, *13 (Bankr.Colo.2015). And as we explained in the previous section, the trial court correctly determined that the Gerig Mortgage was not enforceable against Troon based on merger. For these reasons, we conclude the trial court did not err when it denied the motion for reconsideration and overrule the second assignment of error.

## V. SLANDER OF TITLE CLAIM

**{¶31}** "Slander of title is a tort action 'against one who falsely and maliciously defames title to property and causes some special pecuniary damages or loss.' " *Bank of New York Mellon v. Floyd*, 8th Dist. Cuyahoga No. 110248, 2021-Ohio-3736, ¶ 58, quoting *Acme Constr. Co. v. Continental Natl. Indemn. Co.*, 8th Dist. Cuyahoga No. 81402, 2003-Ohio-434, ¶ 46. To succeed, the claimant must prove that " '(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages.' " *Id.*, quoting *Green v. Lemarr*, 139 Ohio App.3d 414, 430-431, 744 N.E.2d 212 (2d Dist.2000).

**{¶32}** "Typically, slander of title cases involve[ ] documents such as liens or mortgages 'filed against a particular piece of property by parties who claim an interest in the property.' " *WWSD, LLC v. Woods*, 2022-Ohio-952, 188 N.E.3d 244, ¶ 57 (10th Dist.), reconsideration granted in part on other grounds, 2023-Ohio-3174, quoting *Green* at 431. "Documents filed against real property impact title by placing a cloud on the title." *Id.* " 'As a general rule, courts have found that wrongfully recording an unfounded claim to the property of another is actionable as slander of title. * * * This is so provided that the other elements for slander of title, namely malice and special damages, are present.' " (Omission sic.) *Green* at 433-434, quoting *TXO Prod. Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 467, 419 S.E.2d 870 (1992).

### A. The Denial of Summary Judgment

**{¶33}** In the remainder of the first assignment of error, the Appellants contend that the trial court erred by denying AFT's motion for summary judgment on the slander of title

claim, and in the third assignment of error, they contend that the trial court also erred by denying Mr. Adams' motion for summary judgment on that claim. The Appellants assert that as detailed in their arguments challenging the summary judgment decision on the declaratory judgment/quiet title claim, the Gerig Mortgage is valid and enforceable. Therefore, the Assignment of Mortgage "and the recording of that assignment could not, as a matter of law, constitute a false statement." However, in Section III.B.2 of this decision, we held that the trial court did not err when it granted Troon summary judgment on the declaratory judgment/quiet title claim because the court correctly determined that the Gerig Mortgage was not enforceable based on merger. Therefore, the Appellants' assertion lacks merit.

{¶34} The Appellants suggest that even if the Gerig Mortgage was not enforceable, the Assignment of Mortgage still does not contain false statements. They maintain that the trial court recognized this fact because in granting Gerig summary judgment, the court found the assignment did "nothing but assign whatever interest Defendant Gerig has in [the Gerig Mortgage] to [AFT]," the assignment "made no warranties or representations concerning the enforceability of the mortgage," and the "statement of assignment is true." They assert that a review of the Assignment of Mortgage confirms these findings. However, in Section III.B.2 of this decision, we explained that once the Gerig Note was assigned to AFT, the debt was extinguished, and consequently, the Gerig Mortgage was also extinguished. Because the Assignment of Mortgage indicated the Gerig Mortgage still existed and encumbered the Route 56 Farm, it constituted a false statement.

**{¶35}** For the foregoing reasons, we conclude the Appellants have not demonstrated that the trial court erred by denying them summary judgment on the slander of title claim. Accordingly, we overrule the remainder of the first assignment of error and the third assignment of error.

## B. The Verdict

### 1. Position of the Appellants

**{¶36}** In the fourth assignment of error, the Appellants assert that the trial court erred and abused its discretion by finding in favor of Troon on its slander of title claim and entering judgment in favor of Troon and against them. They assert that the court erred in finding them liable for slander of title based on AFT's inability to pursue Troon for payment on the note. They direct our attention to the paragraph in the conclusions of law stating that they "knew, or should have known, that the Gerig Mortgage was void and could not be enforced against Troon, by operation of" the Section 9 provisions of the Troon-AFT Settlement Agreement and Gerig-AFT Agreement. They interpret this paragraph to mean that "the only ground on which the trial court found the mortgage could [not] be enforced was" by operation of the Section 9 provisions. They assert those provisions only precluded AFT from enforcing a payment obligation against Troon, not enforcing the mortgage, so "the trial court's basis for finding the assignment false was legal error." They also assert that the Assignment of Mortgage is true because it "merely indicated assignment of whatever interest Gerig had in that mortgage to AFT" and "contained no representations or warranties about the enforceability of the underlying mortgage."

**{¶37}** The Appellants also assert that the trial court made additional findings which "confuse the separate remedies of enforcement of the note's payment obligations and

enforcement of the mortgage." They maintain that the court held that they knew the Assignment of Mortgage created a false statement "based solely" on their awareness of the Section 9 provisions. And they direct our attention to the paragraph in the conclusions of law in which the court determined that they acted with reckless disregard for Troon's rights by ignoring the Section 9 provisions and knowingly recording a document in the chain of title to indicate the continuing enforceability of a void mortgage. They maintain that their "knowledge of the contract terms that precluded them from enforcing a payment obligation against Troon could not have affected the distinct remedy of enforcement of the mortgage." Thus, they claim the trial court committed legal errors in holding them liable for slander of title. They assert that "[b]ecause AFT's inability to enforce the *note* against Troon does not affect AFT's ability to enforce the *mortgage*, the mortgage was not void and the Assignment of Mortgage and its recording could not constitute slander of title as a matter of law." (Emphasis sic.)

## 2. Analysis

**{¶38}** The Appellants misinterpret the trial court's findings of fact and conclusions of law. Although the trial court did not repeat the merger finding it made during the summary judgment proceedings, the trial court's conclusion that the Assignment of Mortgage constituted a false statement is not premised solely on the court's interpretation of the Section 9 provisions of the Troon-AFT Settlement Agreement and Gerig-AFT Agreement. Before reaching the falsity conclusion, the trial court found that Mr. Adams conveyed his interest in GVV to Gerig in return for his liabilities to her being extinguished, that all obligations of Appellants to Gerig were extinguished as a result of the Gerig-AFT Agreement, and that in that agreement, "the parties intentionally omitted any reference to

the value of the [GVV] membership interest in order to obscure that a trade of equally valuable assets had occurred." In the first paragraph of its conclusions of law, the court then stated: "The debt owed by Bret Adams and AFT on the underlying Gerig Note was extinguished when the [GVV] interest was conveyed, and as a matter of law, the corresponding Gerig Mortgage was extinguished also." The court then quoted and emphasized case law indicating that if the debt underlying a mortgage is paid, the mortgage is extinguished and void.

{¶39} Appellants ignore this paragraph and skip to the third paragraph of the conclusions of law, which states, "AFT and Bret Adams knew, or should have known, that the Gerig Mortgage was void and could not be enforced against Troon, by operation of both Section 9 of the [Troon-AFT Settlement Agreement], and §9 of the Gerig-AFT Agreement which explicitly stated that the holder of the Gerig Note could only pursue 'Borrowers' for payment." When the first and third paragraphs of the conclusions of law are read together, it is evident that the trial court concluded that (1) the Gerig Mortgage was void due to the satisfaction of the underlying debt, i.e., the Gerig Note, (2) the Gerig Mortgage also could not be enforced against Troon by operation of the Section 9 provisions, and (3) the Appellants knew or should have known these things. Thus, there were two grounds for the trial court's subsequent determination that the Assignment of Mortgage "constituted a false statement because it represented to the world that a valid, enforceable lien existed against [the Route 56 Farm] (in the form of the Gerig Mortgage) when it did not." First, the mortgage was void due to satisfaction of the underlying debt, and second, the mortgage could not be enforced against Troon by operation of the Section 9 provisions.

{¶40} The Appellants do not challenge the first ground in their appellate brief. So even if we agreed with their position that the trial court erred in its interpretation of the Section 9 provisions, the trial court's determination that the Gerig Mortgage was not a valid, enforceable lien would still stand. And because the Assignment of Mortgage indicated that the Gerig Mortgage still existed and encumbered the Route 56 Farm, the Assignment of Mortgage constituted a false statement.

{¶41} The trial court also did not conclude that the third element of the slander of title claim, i.e., the statement was made with malice or made with reckless disregard of its falsity, was satisfied based solely on the court's interpretation of the Section 9 provisions. As explained above, the trial court found that the Gerig Mortgage was void because the underlying debt was satisfied and that Appellants knew or should have known this. The trial court also found: "By ignoring the plain text of §9 of the Gerig-AFT Agreement and Settlement Agreement, and *knowingly recording a document into the chain of title to indicate the continuing enforceability of a void mortgage*, both AFT and Bret Adams acted with 'reckless disregard for the rights of' Troon." (Emphasis added.) When read in context with the court's earlier determinations, we interpret the italicized language to be another reference to the trial court's conclusion that the Gerig Mortgage was void because the underlying debt was satisfied. The court also found that "Bret Adams acted with actual malice in recording the Assignment, as evidenced by his lengthy history of verbal abuse towards Troon and its principals, Troon's counsel, his retaliatory lawsuits in other courts, and his explicit threat that 'I will get that deed back one way or another.' " So even if we agreed with the Appellants that the trial court erred in its

interpretation of the Section 9 provisions, there are still additional, unchallenged reasons supporting the trial court's determination that the third element was satisfied.

**{¶42}** We note that in their reply brief, the Appellants did make some arguments about whether the Gerig Note had been satisfied, but these arguments do not address the decision on the slander of title claim. In its appellee's brief, Troon asserted that the Gerig Mortgage was void because summary judgment evidence established that the Gerig Note was paid in full as a result of the Gerig-AFT Agreement, so the trial court's decision granting Troon summary judgment on its declaratory judgment/quiet title claim was correct as a matter of law and should be affirmed. In response, the Appellants asserted that "Troon identifies no evidence that complete payment of the amount owed on the note ever occurred" and that its argument was "one of accord and satisfaction, not payment." They asserted that Troon had the burden to prove they intended for the Gerig-AFT Agreement to "completely extinguish the Gerig Note," that the "relevant documents establish" that they did not have such an intent, and that "Troon did not meet its burden of proving the Gerig Note debt was extinguished." They also asserted that the trial court "did not address" the accord and satisfaction argument "in its summary judgment decision" and that we should "reject Troon's invitation to affirm summary judgment based on an argument that the trial court not only did not adopt, but never addressed." Whether Troon was entitled to summary judgment on the declaratory judgment/quiet title claim based on satisfaction of the Gerig Note is a separate issue from whether the trial court's post-trial determination that the Gerig Note had been satisfied is against the manifest weight of the evidence presented at the trial on the slander of title claim. The reply brief addresses the former issue, not the latter one.

**{¶43}**  The Appellants have not demonstrated that the trial court erred by finding in favor of Troon on the slander of title claim and entering judgment in favor of Troon and against them.  Accordingly, we overrule the fourth assignment of error.

VI.  CONCLUSION

**{¶44}**  Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**